# 20-1300-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



MARC FISHMAN,

*Plaintiff-Appellant,*

*v.*

OFFICE OF COURT ADMINISTRATION NEW YORK STATE COURTS, MICHELLE D'AMBROSIO, IN HER ADMINISTRATIVE AND OFFICIAL CAPACITY, NEW YORK STATE UNIFIED COURT SYSTEM, NANCY J. BARRY, DISTRICT EXECUTIVE OF 9TH DISTRICT NY COURTS, IN HER ADMINISTRATIVE AND OFFICIAL CAPACITY, DAN WEISZ, PROFESSIONAL DIRECTOR, IN HIS ADMINISTRATIVE AND OFFICIAL CAPACITY,

*Defendants-Appellees,*

*and*

JUDGE GORDON OLIVER, IN HER ADMINISTRATIVE AND OFFICIAL CAPACITY, MAGISTRATE CAROL JORDAN, IN HER ADMINISTRATIVE AND OFFICIAL CAPACITY, KATHY DAVIDSON, CHIEF ADMINISTRATIVE JUDGE OF THE 9TH CIRCUIT AND FORMER CHIEF JUDGE OF THE WESTCHESTER FAMILY COURT IN HER ADMINISTRATIVE AND OFFICIAL CAPACITY, JUDGE MICHELLE I. SCHAUER, IN HER ADMINISTRATIVE AND OFFICIAL CAPACITY, JUDGE HAL B. GREENWALD, IN HIS ADMINISTRATIVE AND OFFICIAL CAPACITY, JUDGE ALAN D. SCHEINKMAN, IN HIS ADMINISTRATIVE AND OFFICIAL CAPACITY AS CHIEF ADMINISTRATIVE JUDGE OF THE 9TH CIRCUIT COURTS,

*Defendants.*

_____

*On Appeal from the United States District Court
for the Southern District of New York*

## BRIEF FOR PLAINTIFF-APPELLANT

Caner Demirayak
LAW OFFICE OF CANER DEMIRAYAK, ESQ.
*Attorneys for Plaintiff-Appellant*
300 Cadman Plaza West, 12th Floor
Brooklyn, New York 11201
718-344-6048

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................. i

TABLE OF AUTHORITIES ..................................................... iii

JURISDICTIONAL STATEMENT ........................................... 1

ISSUES PRESENTED FOR REVIEW ..................................... 2

STATEMENT OF THE CASE ................................................. 3

STATEMENT OF FACTS ....................................................... 6

SUMMARY OF THE ARGUMENT .................................... 10

ARGUMENT ...................................................................... 13

   STANDARD OF REVIEW ................................................ 13

**I.**    **The District Court Erred in Finding that Judge Schauer's Court Attorney is Shielded by Judicial Immunity for Purely Administrative Disability Accommodation Related Conduct** ............................. 13

**II.**   **The District Court Committed Reversible Error by Affording Defendants Eleventh Amendment Immunity Where Plaintiff Claims a Denial of Access to Judicial Services under Title II of the Americans with Disabilities Act** ................................................. 19

**III.**  **The District Court was Wrong to Dismiss on the Basis of a Lack of Jurisdiction Where the Complaint Asserts Defendants Waived any Eleventh Immunity under the Rehabilitation Act by Receiving and Accepting Federal Funds post *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98 (2d Cir. 2001)** ....................... 24

**IV.**  **The District Court Improperly Abstained from Entertaining Jurisdiction Over this Matter Pursuant to the Doctrines of *Rooker-Feldman, Younger,* and *O'Shea*** ................................................ 27

    A.  *Rooker-Feldman* Cannot Apply as the Federal Action was Filed Prior to Final Decision in the State Court Proceedings ........................ 27

    B.  *Younger* Abstention is Not Applicable as there are no Pending State Court Actions Involving the Defendants ................................ 30

    C.  Abstention Under *O'Shea* is Inappropriate as Plaintiff Does not Seek Continuous Federal Supervision over his State Court Proceedings ........ 32

**V.     The Notice of Appeal in This *Pro Se* Matter Was Timely Filed During the COVID-19 Pandemic**......................................................................33

CONCLUSION ...................................................................................39

CERTIFICATE OF COMPLIANCE......................................................40

CERTIFICATE OF SERVICE .............................................................41

# TABLE OF AUTHORITIES

**Cases**

*23-34 94th St. Grocery Corp. v. New York City Bd. of Health*, 685 F.3d 174 (2d Cir. 2012)…………………………………………………...………………..15

*Abrahams v. MTA Long Island Bus*, 644 F.3d 110 (2d Cir. 2011) .................. 22, 23

*Bd. Of Trs. v. Garrett*, 531 U.S. 356 (U.S. 2001) ......................................................2

*Bliven v. Hunt*, 579 F.3d 204 (2d Cir. 2009) ..................................................... 13, 14

*Camp v. Oliver*, 798 F.2d 434 (11th Cir. 1986).......................................................35

*Davis v. Shah*, 821 F.3d 231 (2d Cir. 2016) ...........................................................24

*Dean v. University at Buffalo School of Medicine and Biomedical Sciences*, 804 F.3d 178 (2d Cir. 2015)...........................................................................................24

*Disability Rights N.Y. v New York*, 916 F.3d 129 (2d Cir. 2019) ............... 30, 31, 32

*Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).......... 2, 6, 12

*Doe v. Pfrommer*, 148 F.3d 73 (2d Cir. 1998).........................................................24

*Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) ............................ 14, 15

*Fischer v. United States Dep't. of Justice*, 759 F.2d 461 (5th Cir. 1985) ...............36

*Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019)……………………………..15

*Franklin v. McHugh*, 804 F.3d 627 (2d Cir. 2015)..................................................33

*Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98 (2d Cir. 2001) ...………………………………………………………………..2, 21, 25, 26

*Green v. Mattingly*, 585F.3d 97 (2d Cir. 2009) ......................................................28

*Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003)................................. 24, 25

*Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005)...............29

*Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2004) .................................................14

*Jones v. Cnty. of Westchester*, 678 Fed. Appx. 48 (2d Cir. 2017)................... 30, 31

*Kadoch v. Kadoch*, 662 Fed. Appx. 26 (2d Cir. 2016) ...........................................28

*Keitt v. New York City*, 882 F.Supp.2d 412 (S.D.N.Y. 2011) (Daniels, DJ) ..........26

*Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130 (2d Cir. 2015) ..........................13

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009).......................21

*Martinez v. New England Farm Workers Council*, 1990 U.S. App. LEXIS 22466
(1st Cir. 1990) .........................................................................................................36

*Matter of Solomon v Fishman*, 162 A.D.3d 1052 (2d Dep't. 2018).......................29

*Morabita v. New York*, 803 Fed. Appx. 463 (2d Cir. 2020) ...................................13

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ....................................................... 2, 6, 12

*Oliva v. Heller*, 839 F.2d 37 (2d Cir. 1988)............................................................14

*Pulliam v. Allen*, 466 U.S. 522 (U.S. 1984)............................................................19

*Richter v. Conn. Judicial Branch*, 600 Fed. Appx. 804 (2d Cir. 2015)..................15

*Rodriguez by Rodriguez v. City of New York*, 197 F.3d 611 (2d Cir. 1999) ..........21

*Rooker v. Fid. Tr. Co.,* 263 U.S. 413 (1923) ................................................... 2, 6, 12

*Sprint Communs, Inc. v. Jacobs*, 134 S. Ct. 583 (U.S. 2013 ..................................30

*Sung Cho v. City of New York*, 910 F.3d 639 (2d Cir. 2018) ..................................28

*Szymonik v. Connecticut*, 807 Fed. Appx. 97 (2d Cir. 2020) ..................................27

*T.W. v. N.Y. State Bd. of Law Examiners*, 2019 U.S. Dist. LEXIS 160175 (E.D.N.Y. 2019) (Dearie, DJ) ..................................................................... 24, 25, 26

*Tennessee v. Lane*, 541 U.S. 509 (U.S. 2004) ................................................. passim

*Tennessee v. Lane, 541 U.S. 509 (U.S. 2004) (Ginsburg, concuring)*....................20

*United States v. Akinrosotu*, 637 F.3d 165 (2d Cir. 2011)…………………..…16

*United States v. Batista*, 22 F.3d 492 (2d Cir. 1994)........................................ 37, 38

*United States v. Georgia*, 546 U.S. 151 (U.S. 2006).................................. 11, 22, 23

*United States v. Hill*, 722 Fed. Appx. 814 (10th Cir. 2018) ...................................33

*Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019))..................................................13

*Younger v. Harris*, 401 U.S. 37 (1971)........................................................ 2, 6, 12

**Statutes**

28 U.S.C. 1291 ...........................................................................................................1

28 U.S.C. 1331 ...........................................................................................................1

28 U.S.C. 1915(e)(2)(B)(iii) ......................................................................................5

29 U.S.C. 794(a) ............................................................................................... passim

42 U.S.C. 12131 ................................................................................................ passim

Pub. L. No. 110-325, 122 Stat. 3553 (2008)...........................................................18

# TABLE OF AUTHORITIES-cont.

**Rules**

Fed. R. App. Pro. 4(d) ..................................................................................... 33, 35

Fed. R. Civ. P. 12(b)(1) ............................................................................................13

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 13, 26

Local Rule 25.2(d)(1) ......................................................................................... 34, 35

Local Rule 25.2(d)(3) ......................................................................................... 34, 35

Local Rule 25.2(e) .....................................................................................................35

**Constitutional Provisions**

U.S. Const. amend XI ..................................................................................... passim

U.S. Const. amend XIV ............................................................................................22

**Other Authorities**

*Computer Aided Real-Time Transcription (CART)*, National Disability Navigator –
Resource Collaborative https://nationaldisablitynavigator/ndnrc-
materials/disability-guide/computer-aided-real-time-transcription-cart (last visited
Oct. 13, 2020) ...........................................................................................................9

*How Court Users Can Obtain Accommodations*, New York State Unified Court
System, *http://ww2.nycourts.gov/Accessibility/CourtUsers_Guidelines.shtml#how*
(last visited Oct. 11, 2020) .....................................................................................16

National Court Reporters Association Broadcast & CART Captioning Committee,
*The CART Captioner's Manual*, 116-2, 4 (Nov. 2019),
https://www.ncra.org/docs/default-
source/uploadedfiles/governmentrelations/cartmanual.pdf (last visited Oct. 13,
2020) .........................................................................................................................9

Order of Chief Judge Katzman, March 16, 2020 ...................................................36

**TABLE OF AUTHORITIES-cont.**

*Remote CART Services*, NWI Global,  www.nwiglobal.com/services/remotecart
(last visited Oct. 13, 2020) .........................................................................9

United States Amicus Brief, *King v. Marion County Circuit Court*, No. 16-3726
(7th Cir. Feb. 17, 2017)............................................................ 20, 21, 22

# JURISDICTIONAL STATEMENT

This is a civil appeal from a March 5, 2020 dismissal of plaintiff's Second Amended Complaint (hereinafter "SAC") by the Southern District of New York (Kenneth Karas, J.). Dkt. 84. Judgment was entered dismissing this case on March 6, 2020. Dkt. 85. The district court had proper federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. 1331 based on plaintiff's claims under Title II of the Americans with Disabilities Act (42 U.S.C. 12131, *et seq.*) and section 504 of the Rehabilitation Act (29 U.S.C. 794(a)). Dkt. 2, 26, 42, 44, 44-1, & 48. The district court afforded plaintiff *in forma pauperis* status and did not deny such status for the purposes of this appeal. Dkt. 7 & 8. The plaintiff filed a timely notice of appeal on April 4, 2020 via mail, e-mail and facsimile. Dkt. 86. As explained *infra* the notice of appeal was timely filed even though it was also mistakenly filed with the court of appeals and was filed via e-mail. Thus, this Court has jurisdiction over plaintiff's appeal pursuant to 28 U.S.C. 1291.

## ISSUES PRESENTED FOR REVIEW

1.      Whether the district court erred in holding that court attorney Michelle D'Ambrosio is entitled to absolute judicial immunity for her actions involving plaintiff's request for reasonable accommodations under the Americans with Disabilities Act and the Rehabilitation Act?

2.      Whether the district court erred in holding that the Eleventh Amendment provides immunity to defendants from suit involving the fundamental right of access to the courts?

3.      Whether the district court committed reversible error by failing to address plaintiff's claims that the defendants waived any purported Eleventh Amendment immunity under the Rehabilitation Act by accepting federal funds post *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98 (2d Cir. 2001) and *Bd. Of Trs. v. Garrett*, 531 U.S. 356 (U.S. 2001)?

4.      Whether the district court erred in declining to exercise jurisdiction over this matter pursuant to the doctrines of "*Rooker-Feldman*," *Younger*, and *O'Shea*?

**STATEMENT OF THE CASE**

On January 10, 2018 the plaintiff-appellant filed a civil complaint in the Southern District of New York claiming discrimination on the basis of his cognitive and hearing disabilities during state family court proceedings. Dkt. 2. The plaintiff asserted that the state court judge, her court attorney, and the court's administrative office refused to accommodate his disabilities by failing to provide the requested note taker (scribe), large print court orders, morning only court appearances, and the provision of Computer Assisted Realtime Transcription (hereinafter "CART") services. Dkt. 2.

The complaint also alleged that the defendants refused to accept plaintiff's disabilities. Dkt. 2. During a November 2, 2015 hearing the family court judge stated: "I'm offended, really, frankly, about your throwing around this language that you are being discriminated against because you are disabled." Dkt. 2 at 65. The court further stated: "[Y]ou're saying I'm discriminating against you because you're disabled, and what I'm saying is that as you sit here right now, there is no apparent disability. You're not in a wheelchair, you didn't come in with a cane, you don't have crutches, you don't have a brace on you. There's no physical indication that you have any disability." Dkt. 2 at 65—6.

At a later June 21, 2017 hearing the family court judge stated: "As far as I can see, there's no disabilities, only new ideas as to how this court can accommodate

whatever disabilities he says he has. And frankly, some of these requests are ridiculous." Dkt. 2 at 122.

On January 19, 2018 the district court granted plaintiff's request to proceed *in forma pauperis*. Dkt. 7 & 8.

On April 23, 2018 the defendant Office of Court Administration New York State Courts (hereinafter "OCA") filed a motion for a pre-motion conference to dismiss. Dkt. 15. On April 24, 2018 the plaintiff filed a motion for a preliminary injunction. Dkt. 17. On June 11, 2018 the court conducted oral argument on the motion for a preliminary injunction and denied the motion. Dkt. 24. The Court also directed plaintiff to file an amended complaint within 30 days. Dkt. 24.

On July 9, 2018 plaintiff timely filed the first amended complaint. Dkt. 26. On July 25, 2018 the defendant OCA filed a motion for a pre-motion conference to dismiss the amended complaint. Dkt. 27. On August 15, 2018 the district court issued a briefing schedule for OCA's motion to dismiss. Dkt. 28. On August 31, 2018 the plaintiff filed another motion for a preliminary injunction. Dkt. 29.

On September 7, 2018 the plaintiff filed a second amended complaint without leave of court. Dkt. 32. On October 9, 2018 the district court issued an order construing plaintiff's September 7, 2018 filing as a request for leave to file a second amended complaint and directed that such an amended complaint be filed by November 8, 2018. Dkt. 41. Plaintiff timely filed the second amended complaint on

November 8, 2018. Dkt. 43. Also on November 8, 2018 plaintiff submitted a letter and a revised SAC, requesting the court use the revised second amended complaint as the operative complaint. Dkt. 44.

On November 26, 2018 the district court *sua sponte* dismissed all claims against Judge Schauer, Judge Gordon-Oliver, Judge Davidson, Judge Greenwald, Judge Scheinkman, and Magistrate Jordan pursuant to 28 U.S.C. 1915(e)(2)(B)(iii) and denied *in forma pauperis* status for an appeal of that order. Dkt. 46.

On December 12, 2018 the district court ordered that plaintiff's revised SAC filed under Docket 44 is the operative complaint for the purposes of the litigation. Dkt. 48.

On January 9, 2019 the district court denied plaintiff's second motion for a preliminary injunction and denied a hearing on the motion. Dkt. 50. On February 26, 2019 the district court denied plaintiff's January 8, 2019 request for the appointment of *pro bono* counsel. Dkt. 57.

On May 23, 2018 defendants Michelle D'Ambrosio, Nancy J. Barry, New York State Unified Court System, OCA, and Dan Weitz filed their motions to dismiss. Dkt. 67 & 70. On July 24, 2019 the plaintiff submitted a letter to the district court which was then construed by the court as plaintiff's memorandum in opposition to the motions to dismiss on July 25, 2019. Dkt. 79 & 80.

On March 5, 2020 after full briefing and consideration of the motions to dismiss the district court issued an opinion and order dismissing plaintiff's second amended complaint. Dkt. 84. The district court held that Michelle D'Ambrosio, a court attorney, was shielded by judicial immunity, that all claims were barred by the Eleventh Amendment to the United States Constitutionand that the doctrines of *Rooker-Feldman* (*Rooker v. Fid. Tr. Co.,* 263 U.S. 413, 415—16 (1923) & *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983), *Younger v. Harris*, 401 U.S. 37, 43-44 (1971), and *O'Shea v. Littleton*, 414 U.S. 488 (1974) required the district court to abstain from exercising jurisdiction.

On March 6, 2020 the clerk of the court issued judgment dismissing this case. Dkt. 85. The plaintiff-appellant then timely filed a notice of appeal dated April 3, 2020 which was mailed, e-mailed and faxed to the district court and court of appeals on April 4, 2020. Dkt. 86.

## STATEMENT OF FACTS

Marc Fishman is a severely disabled individual engaged in an arduous family court battle over custody of and visitation with his children. Dkt. 44-1. He has numerous cognitive and auditory disabilities which make it very difficult for him to to hear or understand during court proceedings. *Id* at 2, 16, 37, 41, & 46—47. He suffers from severe obstructive sleep apnea, occipital neuralgia, tinnitus, peripheral neuropathy, post-concussion syndrome, and temporomandibular joint dysfunction

(hereinafter "TMJ"). *Id* at 46. Mr. Fishman made simple requests for accommodations in the form of auxiliary aids, including the request for a notetaker (scribe), large print court orders, morning only court appearances and Computer Assisted Real Time Transcription ("CART") services during proceeding. *See id* at 4 & 55.

The Court denied such accommodations and questioned Mr. Fishman's disabilities, going as far as to accuse him of faking such disabilities. Dkt. 44-1. OCA also refused to accept Mr. Fishman's disabilities and refused to provide him with CART services. Instead of allowing Mr. Fishman to receive the benefit of a live CART transcriber while court proceedings were ongoing, the defendants forced Mr. Fishman to purchase transcripts from a court reporter after proceedings had ended, with significant delays in time between the proceeding and receipt of a transcript. *See* Dkt. 44-1 at 15 ("[I]t took months to obtain most court transcripts [as] staff delayed from being produced intentionally by instructing the court clerk and staff not to send digital recordings or delay sending recordings to my transcriber.").

On the administrative side of the New York State Court System's accommodation procedures, non-judicial court officials likewise refused to accept appellant's non apparent disability. On June 22, 2018 appellee Nancy Barry denied plaintiff's request for an accommodation for real time reporting or CART services by stating such accommodation is for persons with hearing impairments. Dkt. 29 at

27—30 & Dkt. 32 at 79—82. In denying such accommodation, Barry stated plaintiff did not prove his disability sufficiently to warrant such accommodation. *See id*. On August 7, 2018 appellee Dan Weitz affirmed the denial of the accommodation by Barry and again held that plaintiff failed to prove he was disabled or entitled to the accommodations he requested. *See id*. This was despite plaintiff's submission of a letter from his doctor stating the appellant had cognitive impairments rendering the requested accommodations helpful. OCA's Americans with Disabilities Act (hereinafter "ADA") administrative accommodation grievance procedure does not provide for any further review or appeal after determination by Dan Weitz, the ADA Statewide coordinator.

The SAC makes clear that the defendants never engaged in an "interactive process" to determine how to accommodate plaintiff-appellant's disabilities. Dkt. 44-1. Instead, the defendants refused to credit plaintiff-appellant's disabilities and demanded onerous medical proof of same. *Id*.

The Court refused to provide Mr. Fishman with CART services, which involves a transcriber typing all spoken words during a court proceeding real time to permit a person with hearing or cognitive impairments to follow the proceeding live and immediately. *See* Dkt. 44-1. And the defendants wrongly denied CART[1]

---

[1] "CART is a method to provide access to spoken communication for people who are deaf, hard of hearing, or who have certain cognitive or learning impairments." *See Computer Aided Real-Time Transcription (CART)*, National Disability Navigator – Resource Collaborative

services to the plaintiff based on an improper understanding of the auxiliary aid. As a result, Mr. Fishman incurred nearly $30,000 in expenses to purchase court reporter transcripts. *Id*. The defendants illegally engaged in conduct causing Mr. Fishman to pay for the auxiliary aids to accommodate his disability, and causing him economic harm. *Id*.

In the Second Amended Complaint the plaintiff-appellant makes clear that all of his disabilities affect major bodily functions." Dkt. 44-1. Plaintiff states that the disabilities have a "serious, deleterious impact on major life activities." Dkt. 44-1. This includes: "sleeping [issues], intense pain, ringing in the ear, increased sensitivity to light, short term memory loss, beeping in the ears, and hearing loss." Dkt. 44-1.

Plaintiff alleges in his Second Amended Complaint that "By accepting federal funds, the New York State Unified Court System and Office of Court administration must comply with the anti-discrimination policies…according to the Rehabilitation Act." Dkt. 44-1.

---

https://nationaldisablitynavigator/ndnrc-materials/disability-guide/computer-aided-real-time-transcription-cart (last visited Jul. 22, 2020). As such, "Today, hearing impaired individuals or those with cognitive disabilities are no longer at a disadvantage when listening to speakers at live events." *See Remote CART Services*, NWI Global, www.nwiglobal.com/services/remotecart (last visited Oct. 13, 2020). "CART consumers include people with hearing loss, individuals with cognitive or motor challenges, anyone desiring to improve reading/language skills, and those with other communication barriers." *See* National Court Reporters Association Broadcast & CART Captioning Committee, *The CART Captioner's Manual*, 116-2, 4 (Nov. 2019), https://www.ncra.org/docs/default-source/uploadedfiles/governmentrelations/cartmanual.pdf (last visited Oct. 13, 2020).

# SUMMARY OF THE ARGUMENT

The decision below must be reversed as it improperly applied jurisdictional immunity to claims under Title II of the ADA and the Rehabilitation Act involving access to judicial services and where the defendants receive federal funding. Here, the plaintiff suffers from documented hearing loss and cognitive disabilities which require accommodation in the form of auxiliary aids to fully participate in state court proceedings. The defendants refused to accept the plaintiff was disabled, ridiculed him for such claims, and refused to provide accommodations. Plaintiff had initially requested a note-taker, large print court orders, morning only court appearances and CART services.

Judge Schauer's court attorney, Michelle D'Ambrosio, specifically denied the provision of a note-taker to plaintiff. Her actions in doing so could not be deemed judicial in nature as she was rendering an administrative decision as to disability accommodations. However, the district court improperly held she was entitled to absolute judicial immunity since she was functioning in a judicial capacity when denying such accommodations at the behest of Judge Schauer. The district court did not conduct any analysis as to whether Ms. D'Ambrosio was engaged in non-judicial conduct.

A serious question at this early pleading stage exists as to whether she can be entitled to judicial immunity as the defendant OCA characterizes the provision of

such auxiliary aids as administrative as per its own website. At the very least the court should not have dismissed this defendant on judicial immunity grounds without further discovery and depositions so that the state's own self-imposed dichotomy between administrative and judicial accommodations could be clarified.

Although the plaintiff made claims for a denial of access to judicial services based on his hearing and cognitive disabilities the district court misapplied the Supreme Court's holding in *Tennessee v. Lane*, 541 U.S. 509 (U.S. 2004) and held that the plaintiffs claims were still barred by Eleventh Amendment immunity. This was in direct contravention of *Lane*, in which the Supreme Court made clear that there could be no immunity for claims under Title II of the ADA involving judicial services. The district court went on to improperly hold that the plaintiff must establish that discriminatory animus is required for a plaintiff to show an abrogation of Eleventh Amendment immunity from Title II claims. However, the Second Circuit applies the deliberate indifference standard to such claims and immunity had already been abrogated as per the high Court's decision in *Lane*. Moreover, under *United States v. Georgia*, 546 U.S. 151 (U.S. 2006)*,* the plaintiff had clearly shown that an abrogation of immunity was appropriate as he had sufficiently pled an equal protection violation and that abrogation was nevertheless appropriate to his class of claim involving denial of full and equal access to judicial services.

The district court further erred by dismissing plaintiffs claims under Title II of the ADA and the Rehabilitation Act in the face of the defendants' receipt of federal funding. The district court did not analyze the impact receipt of federal funds should have on such claims. Since the plaintiff made such claims any dismissal of the ADA claims pursuant to a supposed application of Eleventh Amendment immunity would be improper as the state defendants otherwise waived such immunity by its receipt of federal funds under the Rehabilitation Act. So long as the plaintiff can show a lack of immunity under one statute, claims under both should survive in this Circuit.

The district court attempted to explain its failure to fully assess the federal funding question by stating it had to otherwise abstain from entertaining jurisdiction. However, the *Rooker-Feldman* doctrine could not apply to this case as the plaintiff filed his federal suit prior to any final decisions in the state court matter. In addition, *Younger* abstention was not valid as the state court proceedings are no longer pending as it relates to court attorney Michelle D'Ambrosio. Moreover, plaintiff's claims of economic damages militates against the theory that any decision here would result in an interference with or disruption of state court proceedings. Likewise, *O'Shea* was not applicable since plaintiff did not request continuous federal audit of his family court proceedings. Plaintiff merely requested simple accommodations for his disabilities.

# ARGUMENT

## STANDARD OF REVIEW

This appeal involves the dismissal of plaintiff's Second Amended Complaint pursuant to motions filed under Federal Rule of Civil Procedure 12(b)(1) and (6). As such, the Second Circuit will apply a *de novo* standard of review. *See Morabita v. New York*, 803 Fed. Appx. 463, 465 (2d Cir. 2020) (*citing Washington v. Barr*, 925 F.3d 109, 113 (2d Cir. 2019)). As this case also involves dismissal pursuant to the Eleventh Amendment, legal conclusions are subject to a *de novo* standard of review while factual findings are subject to clear error review. *See Morabita*, 803 Fed. Appx. At 465 (*citing Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015)).

## I. The District Court Erred in Finding that Judge Schauer's Court Attorney is Shielded by Judicial Immunity for Purely Administrative Disability Accommodation Related Conduct

In this Circuit, "Judges [and judicial employees] are not…absolutely immune from liability for nonjudicial actions, i.e., actions not taken in the…judicial capacity." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). As such, "[A] judge's administrative decisions, even though they may be essential to the very functioning of the courts, have not…been regarded as judicial acts." *Id* at 210. Thus, "A judge is not protected under the doctrine of judicial immunity…if the action in question is

not judicial in nature, as when the judge performs an administrative, legislative, or executive act." *Huminski v. Corsones*, 396 F.3d 53, 75 (2d Cir. 2004).

In order to determine whether judicial immunity is applicable courts take the "functional approach" to assess whether the judge or judicial employee engaged in a "function normally performed by a judge" and whether the judge was dealt with in the judicial capacity. *Bliven*, 579 F.3d at 209—10. "The principal hallmark of the judicial function is a decision in relation to a particular case." *Id* at 210—11. In *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988), the Second Circuit explained that judicial immunity has been applied to "[C]ourt clerks where they were performing discretionary actions of a judicial nature." In that case this Circuit held that "[F]or the purposes of absolute judicial immunity, judges and their law clerks are as one." *Id*. However, like judges, the function of the law clerk must still be judicial and not administrative in nature to reap the benefits of absolute immunity from a claim for money damages.

In *Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001), the defendant court ADA coordinator alleged she was entitled to quasi-judicial immunity because she could only arrange courtroom disability accommodations for disabled persons in consultation with the presiding judge. However, the Court held that "[I]t appears that when a statute requires, or perhaps even authorizes, the provision of a particular form of assistive device to a hearing impaired individual,

[the ADA coordinator] has the authority to make the necessary arrangements therefor, as an administrative matter." *See id*. The Court then held that the claims against the ADA coordinator could not be dismissed on the basis of judicial immunity as a question of fact existed as to whether she engaged in administrative rather than judicial conduct as it related to the provision of disability accommodations. *See id*; *but see Richter v. Conn. Judicial Branch*, 600 Fed. Appx. 804 (2d Cir. 2015) (holding that a Judge was shielded by judicial immunity when he failed to provide reasonable accommodations for plaintiff's stress and anxiety disorders).

In the case at bar, the defendant court attorney Michelle D'Ambrosio was not acting in a judicial function when she refused to provide plaintiff with disability accommodations. Her refusal to provide auxiliary aids in the form of a note taker, large print court orders, and CART was an administrative function not necessary to the functioning of the court proceedings. She was not rendering a decision on a legal matter or adjudicating rights as between parties. In fact, the New York State Unified Court System defines such accommodations as administrative. As per www.nycourts.gov[2], the Court's administrative office can provide such

---

[2] As the information contained in the Unified Court System's website is authentic and not subject to dispute, judicial notice should be taken of the information on the website. *See Force v. Facebook, Inc.*, 934 F.3d 53 f.n. 5, (2d Cir. 2019) (holding that "the publicly available terms [on a website[ are also subject to judicial notice"); *see also 23-34 94th St. Grocery Corp. v. New York City Bd. of Health*, 685 F.3d 174 f.n. 7 (2d Cir. 2012) (holding that judicial notice is taken of a

"accommodations including [the]…furnishing [of] auxiliary aids…such as…CART [and] in large print [orders]." *See How Court Users Can Obtain Accommodations*, New York State Unified Court System, *http://ww2.nycourts.gov/Accessibility/CourtUsers_Guidelines.shtml#how* (last visited Oct. 11, 2020). The website then goes on to explain that "Court administrators cannot grant, as an ADA accommodation, requests that would implicate the rights of parties to the proceeding or the Judge's inherent power to manage the courtroom and proceeding." *Id*. The website provides examples of judicial related accommodations as "requests for extension of time, change of venue or participating via telephone or video conferencing." *Id.* Thus, by the Unified Court System and OCA' own policies, court attorney Michelle D'Ambrosio was clearly not acting in a judicial or quasi-judicial capacity when she denied the provision of auxiliary aids to plaintiff, even in consultation with or at the behest of Judge Schauer.

Separate and apart from the court's posted policies on its website, a determination as to whether to provide a disabled person auxiliary aids to accommodate his disability should not be subject to judicial immunity. If the district court's decision to expand judicial immunity to this extent were to be affirmed, no disabled person could challenge the incorrect or discriminatory actions of a judge or

---

poster published on a website); *United States v. Akinrosotu*, 637 F.3d 165, 168 (2d Cir. 2011) (holding that judicial notice may be taken of the Bureau of Prisons website).

judicial employee in refusing to accept a disability or to accommodate a disability. The defendants could easily change their rules to require judges and judicial employees to make all decisions as to disability accommodations and then based on the district court's ruling here, such determinations would be subject to immunity.

Judges and judicial employees are not infallible and can make mistakes or incorrect judgment calls as to whether a person in a proceeding suffers from a disability. Such government actors could mistakenly fail to realize a person is deaf or hard of hearing or suffers from cognitive or developmental disabilities. Such failures would then result in a refusal to accommodate such disabilities with the auxiliary aids necessary to permit the disabled person to understand and follow court proceedings. On the other end of the spectrum, the government actors may refuse to accommodate a disabled person's disability because of improper reasons such as dislike for the particular litigant or just plain discrimination.

In this case, Michelle D'Ambrosio was the law clerk for Judge Schauer who made several discriminatory statements against plaintiff, his disabilities and accommodation requests. Judge Schauer stated on the record: "I'm offended, really, frankly, about your throwing around this language that you are being discriminated against because you are disabled." Dkt. 2 at 65. The court further stated: "[Y]ou're saying I'm discriminating against you because you're disabled, and what I'm saying is that as you sit here right now, there is no apparent disability. You're not in a

wheelchair, you didn't come in with a cane, you don't have crutches, you don't have a brace on you. There's no physical indication that you have any disability." Dkt. 2 at 65—6. In later court proceedings, the court stated on the record that: "As far as I can see, there's no disabilities, only new ideas as to how this court can accommodate whatever disabilities he says he has. And frankly, some of these requests are ridiculous." Dkt. 2 at 122.

Since Michelle D'Ambrosio served as Judge Schauer's court attorney, the Second Circuit identifies her and the judge as one for the purposes of an assessment of judicial immunity. If they are deemed one functional entity then the Judge's discriminatory and hostile remarks towards plaintiff's disabilities and requests for accommodation should also be attributed to Ms. D'Ambrosio. To the extent that Title II of the ADA required the court to provide plaintiff auxiliary aids for his disability, the court lacked any authority to deny such accommodations. The court also lacked any authority to vigorously question the plaintiff's disabilities in light of the broad definition of disability as per the 2008 ADA Amendments Act. *See* Pub. L. No. 110-325, 122 Stat. 3553 (2008).

The district court below did not conduct a full and proper analysis of judicial immunity and did not even assess whether Michelle D'Ambrosio was engaged in administrative conduct rather than judicial conduct. Such flawed analysis requires reversal as the Court cannot say on a motion to dismiss before any discovery or

depositions that Michelle D'Ambrosio's refusal to provide auxiliary aids was completely judicial in nature and subject to absolute immunity. In any event, plaintiff is claiming prospective injunctive relief, to which no judicial immunity applies. *See Pulliam v. Allen*, 466 U.S. 522, 541—42 (U.S. 1984). The district court did not make any analysis or determination of plaintiff's claims against Michelle D'Ambrosio for prospective injunctive relief yet still held she was entitled to absolute immunity. This was error and the decision below must be reversed.

II.     **The District Court Committed Reversible Error by Affording Defendants Eleventh Amendment Immunity Where Plaintiff Claims a Denial of Access to Judicial Services under Title II of the Americans with Disabilities Act**

The United States Supreme Court has made clear that "Title II, as it applies to the class of cases implicating the fundamental right of access to the court, constitutes a valid exercise of Congress' section 5 authority to enforce the guarantees of the Fourteenth Amendment." *Tennessee v. Lane*, 541 U.S. 509, 533—34 (U.S. 2004). In rendering such holding, the Court found that there is no Eleventh Amendment immunity for claims under Title II of the ADA as it relates to judicial services. The Court reasoned that "Title II's affirmative obligation to accommodate persons with disabilities in the administration of justice…is a reasonable prophylactic measure, targeted to a legitimate end." *Id*. In her concurring opinion, the late Justice Ruth Bader Ginsburg stated that the record of discrimination against persons with

disabilities and barriers to access public services, "at least as it bears on access to courts, [is] sufficient to warrant the barrier-lowering, dignity respecting national solution the People's representatives in Congress elected to order." *Id* at 539 (Ginsburg, *concurring*).

The Court's decision in *Lane* did not hold that proof of discriminatory animus or intent was necessary for an abrogation of immunity. The Court broadly held that as it relates to the access (physical or otherwise) to the courts, Congress properly abrogated Eleventh Amendment immunity. Failing to provide a litigant with the auxiliary aids necessary for full access to the court proceeding is clearly encompassed within this holding.

In fact, the United States Department of Justice (hereinafter "DOJ") has taken the position that "The holding in *Lane* is not limited to cases involving *physical* access to the courts. Indeed, the Court noted that, in enacting the ADA, Congress considered "the failure of state and local governments to provide interpretive services for the hearing impaired." United States Amicus Brief, *King v. Marion County Circuit Court*, No. 16-3726 (7th Cir. Feb. 17, 2017) (internal citations omitted).

As such, the district court erred when it narrowly held that *Lane* only applies to a physical or "genuine" denial of access to court proceedings, instead of denial via the failure to provide auxiliary aids or "interpretive services" for the hearing

impaired. *See* United States Amicus Brief, *King v. Marion County Circuit Court*, No. 16-3726. Thus, since plaintiff claims that the failure to accommodate his hearing and cognitive disabilities resulted in his inability to hear, follow, understand or pay attention during court proceedings, his access to judicial services is implicated and no immunity can apply as per Congress' valid abrogation of immunity as enunciated in *Lane*.

The district court made further errors by holding that proof of discriminatory animus is required to abrogate any immunity under Title II by relying on *Garcia v. SUNY Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 111 (2d Cir. 2001) and in rejection of *Lane*. The Second Circuit has applied the "deliberate indifference" standard to claims of disability discrimination instead of the "discriminatory animus" standard as improperly applied by the district court. *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) ("In the context of the Rehabilitation Act, intentional discrimination against the disabled does not require personal animosity or ill will. Rather discrimination may be inferred when a policymaker acted with at least deliberate indifference."). Since the Rehabilitation Act and Title II of the ADA are interchangeable and subject to the same standards, it is clear the Second Circuit applies the deliberate indifference standard to both statutes. *See Rodriguez by Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999) ("Because section 504 of the Rehabilitation Act and the ADA impose identical requirements, we

consider these claims in tandem."); *see also Abrahams v. MTA Long Island Bus*, 644 F.3d 110, 115 f.n. 3 (2d Cir. 2011) ("Because the ADA and the Rehabilitation Act impose nearly identical requirements, we focus on the ADA but our analysis applies to the Rehabilitation Act as well.").

The DOJ has argued that "The deliberate indifference standard best serves the ADA's purpose of deterring and curtailing a wide array of disability discrimination, not merely that motivated by prejudice." *See* United States Amicus Brief, *King v. Marion County Circuit Court*, No. 16-3726. The DOJ explained that "At the time of the ADA's enactment, discrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *See id*.

Regardless, the facts in this case show evidence of animus and ill will based on Judge Schauer's comments and the refusal of the judge, her court attorney and court administration to accept the plaintiff's disabilities or provide simple and cost effective/free accommodations. The Judge's ill willed comments are attributable to her court attorney, who acted in the judge's behest.

Following *Lane*, the Supreme Court held that the States are not immune from suit under the ADA where the claimed disability discrimination also constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *See United States v Georgia*, 546 U.S. 151 (2006). Where the

claimed discrimination does not violate Equal Protection, a State will still lack immunity where Congress's abrogation of immunity as to a particular the class of challenged conduct is valid. *See id*. With this backdrop in mind, it is apparent that a plaintiff must demonstrate an Equal Protection claim in order to establish the State is not immune from suit under the ADA.

At this early pleading stage of the case, plaintiff-appellant has at the very least, made sufficient allegations to fall within the holding of *Georgia* for an abrogation of Eleventh Amendment immunity had this case not involved the access to judicial services. The plaintiff alleges in his complaint that a disabled litigant with hearing and cognitive disabilities is being treated differently with no rational basis. Even if the claims do not reach the Equal Protection standard, "abrogation of immunity as to this particular class of conduct is valid" as it implicates the plaintiff's ability to hear, understand, follow and pay attention during court proceedings.

Regardless, since the plaintiff alleges that the defendants received federal funds and makes claims under the Rehabilitation Act, there is no reason for the court to assess whether defendants are immune under Title II of the ADA as both statutes are analyzed and viewed co-extensively. *See Abrahams*, 644 F.3d at 115, f.n. 3. The Second Circuit has made clear that "Because the standards imposed by Title II on public entities are generally equivalent to those of section 504, we treat claims under the two statutes identically in most cases." *Davis v. Shah*, 821 F.3d 231, 258 (2d Cir.

2016). As long as a plaintiff shows a lack of immunity under one of the statutes, claims under both statutes will survive. *See id*; *see also Dean v. University at Buffalo School of Medicine and Biomedical Sciences*, 804 F.3d 178, 187 (2d Cir. 2015) ("As the standards for actions under these provisions of the ADA and Rehabilitation Act are generally equivalent, we analyze such claims together."); *T.W. v. N.Y. State Bd. of Law Examiners*, 2019 U.S. Dist. LEXIS 160175, *19 (E.D.N.Y. 2019) (Dearie, DJ) ("Given that the rights and remedies under Title II of the ADA and Rehabilitation Act are identical, the Court need not reach the constitutional question of whether Title II is a valid exercise of Congress' authority under Section 5 of the Fourteenth Amendment.").

III.  **The District Court was Wrong to Dismiss on the Basis of a Lack of Jurisdiction Where the Complaint Asserts Defendants Waived any Eleventh Amendment Immunity under the Rehabilitation Act by Receiving and Accepting Federal Funds post** *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, **280 F.3d 98 (2d Cir. 2001)**

It is established in this Circuit that the knowing acceptance of federal funding is sufficient for a State to waive any Eleventh Amendment immunity from claims under the Rehabilitation Act. *See Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998). In *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003), the Second Circuit stated that "to establish a violation under the Rehabilitation Act, a plaintiff must show that defendants receive federal funding." It is equally clear that "The

requirements under the ADA are nearly identical [to the Rehabilitation Act and as such] any distinctions are not relevant to" determining whether a plaintiff has been discriminated against. *See id*. Thus, if a plaintiff alleges and can show the defendants receive federal funding, and have waived any immunity under the Eleventh Amendment, then all claims pursuant to the Rehabilitation Act and Title II of the ADA will survive.

The plaintiff has alleged that the defendant Office of Court Administration New York State Courts receives federal funding since at least 2016. This allegation has been conceded by the defendants via representations made in a separate case. In *T.W. v. N.Y. State Bd. of Law Examiners*, 2019 U.S. Dist. LEXIS 160175, *19 (E.D.N.Y. 2019) (Dearie, DJ), the New York State Office of the Attorney General conceded that the Unified Court System receives federal funding. And here OCA is an instrumentality of the Unified Court System and is a clear economic beneficiary of such federal funding.

Since the plaintiff alleges that the defendants have continued to receive federal funding post this circuit's decision in *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98 (2d Cir. 2001), same has constituted a knowing waiver of any Eleventh Amendment immunity. In that case this Circuit stated that "When providing funds from the federal purse, Congress may require as a condition of accepting those funds that a state agree to waive its sovereign immunity from suit in

federal court." *See Garcia*, 280 F.3d at 113. In *Garcia*, the Second Circuit held that Title II of the ADA was not a valid abrogation of Eleventh Amendment immunity. As such, the continued acceptance of federal funds after such decision would result in waiver of immunity under the Rehabilitation Act. *See Keitt v. New York City*, 882 F.Supp.2d 412 (S.D.N.Y. 2011) (Daniels, DJ) ("After the…decisions in *Garrett* and *Garcia*…New York State's continued acceptance of federal funds would constitute a valid waiver of sovereign immunity, as the state could no longer rely on the belief that the Congressional dictates in Title II of the ADA…necessarily abrogated state immunity for all such claims.").

The district court below committed reversible error as it did not even refer to or mention the fact that plaintiff made claims under the Rehabilitation Act or alleged that the defendants received federal funding. The Court did not credit these factual allegations as true, as is required when determining a Rule 12(b) motion to dismiss. Instead, the Court clearly overlooked any allegations of the receipt of federal funding and dismissed all claims even in the face of such allegations. This was improper and requires reversal. Even if the allegations of federal funding were questionable, as conceded by New York State in *T.W. v. N.Y. State Bd. of Law Examiners*, the Unified Court System and OCA do continue to receive federal funding as of at least 2019.

IV. **The District Court Improperly Abstained from Entertaining Jurisdiction Over this Matter Pursuant to the Doctrines of *Rooker-Feldman, Younger,* and *O'Shea***

A. *Rooker-Feldman* Cannot Apply as the Federal Action was Filed Prior to Final Decision in the State Court Proceedings

In this Circuit, "[T]he *Rooker-Feldman* doctrine [bars federal] jurisdiction over cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Szymonik v. Connecticut*, 807 Fed. Appx. 97, 99 (2d Cir. 2020). This means that if state and federal proceedings are ongoing on a parallel basis, the doctrine would not bar jurisdiction. Also, if the plaintiff seeks review of non-final orders and dispositions the doctrine likewise does not apply.

Each of the four following requirements must be satisfied for the doctrine to bar jurisdiction: "[T]he federal court plaintiff [must have] (1) lost in state court, (2) complain[] of injuries caused by the state court judgment, (3) invite[] district court review and rejection of that judgment, and (4) commenced district court proceedings after the state judgment was rendered." *See Szymonik*, 807 Fed. Appx. At 99.

In *Szymonik*, this Circuit noted that the plaintiffs filed their original federal complaint well before later final state court orders were issued. The Circuit stated that the "sequencing of events for *Rooker-Feldman*" purposes is unclear at this

juncture," and declined to address the issue. However, the Circuit made clear that where the federal proceeding is commenced before the issuance of final state court orders, the doctrine cannot apply. However, this Circuit did not reach the issue as it found other grounds supporting dismissal in *Szymonik*.

Additionally, this Circuit has held that "*Rooker-Feldman* did not apply where a plaintiff filed a federal suit alleging that defendants' conduct during the course of a state…action violated [a federal statute]." *Sung Cho v. City of New York*, 910 F.3d 639, 645 (2d Cir. 2018). This Court has also held that where a litigant did not "lose in the state family court" and did not raise a particular issue in such family court proceedings, *Rooker-Feldman* would not apply. *Kadoch v. Kadoch*, 662 Fed. Appx. 26, 28 (2d Cir. 2016). And, in *Green v. Mattingly*, 585F.3d 97, 102 (2d Cir. 2009) this Circuit held that *Rooker-Feldman* did not apply to a litigant's action claiming "injuries caused by a state [family] court order that was interlocutory, unappealable, and effectively reversed by a superseding order."

In the case at bar the plaintiff filed this action on January 10, 2018 while state family court proceedings were still ongoing. No final orders as to child custody, orders of protection or visitation had been issued. The main family court orders in dispute were *temporary* and not permanent or final orders of protection and visitation orders. As such, the family court proceedings and the federal action were running parallel along with other related state court proceedings. In fact, as recent as

September 3, 2020, the defendant OCA issued a letter to plaintiff-appellant advising they would now be providing him the accommodation of CART during an upcoming sentencing for violation of one of the orders of protection at issue in this matter. However, as of this date, sentencing still has not proceeded and post-trial motions are pending. The defendant OCA claimed it would permit the accommodation in extraordinary circumstances caused by COVID-19 but still would not credit that plaintiff proved his hearing and cognitive disabilities.

While it is true that on June 27, 2018 the New York State Appellate Division Second Department issued a decision affirming denial of the requested disability accommodations, that decision solely involved an appeal over a *temporary* order of protection which expired in June 27, 2019. *See Matter of Solomon v Fishman*, 162 A.D.3d 1052 (2d Dep't. 2018). Several other appeals have been filed, disposed of or are pending since the filing of the federal case in January 2018. This would still be true even if the court used the November 9, 2018 date for the filing of the second amended complaint. *See Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 89 (2d Cir. 2005) ("[F]ederal suits challenging interlocutory state judgments may present difficult questions as to whether the state proceedings have ended within the meaning of *Rooker-Feldman* on the federal questions at issue.").

Moreover, although the *pro se* plaintiff may have unartfully pled his claims, he does not invite federal review of and rejection of determinations by the state

family court. Instead, he claims that their actions in refusing to accept his disabilities and to not provide reasonable accommodations violated federal laws under Title II of the ADA and Rehabilitation Act. Under these circumstances, it was improper for the district court to apply *Rooker-Feldman* to this case and abstain from jurisdiction.

B. *Younger* Abstention is Not Applicable as there are no Pending State Court Actions Involving the Defendants

In this Circuit it is established that "[F]ederal courts have a virtually unflagging obligation…to exercise the jurisdiction given to them." *Jones v. Cnty. of Westchester*, 678 Fed. Appx. 48, 49 (2d Cir. 2017). "*Younger* abstention…is one of the extraordinary and narrow exceptions to that obligation." *Id*. This form of jurisdictional abstention "seeks to avoid federal court interference with [1] ongoing state criminal prosecutions, [2] state-initiated civil enforcement proceedings, and [3] state civil proceedings that involve the ability of state courts to perform their judicial functions." *Id* (citing *Sprint Communs, Inc. v. Jacobs*, 134 S. Ct. 583, 591 (U.S. 2013)). "In *Sprint*, the Supreme Court held that *Younger's* scope is limited to these three exceptional categories." *See Disability Rights N.Y. v New York*, 916 F.3d 129, 133 (2d Cir. 2019).

Where a plaintiff claims money damages or can recover damages, the Second Circuit finds it "inappropriate" to apply *Younger* abstention. In *Jones v. Cnty. of Westchester*, 687 Fed. Appx. at 49, the Circuit stated, "There appears to be little

chance that a potential award of money damages would interfere with or disrupt the…proceedings that are ongoing in Westchester County Family Court." In addition, "*Younger* mandates abstention only when the plaintiff seeks to enjoin ongoing state proceedings." *Disability Rights N.Y.*, 916 F.3d at 134.

In the case at bar plaintiff-appellant's complaint does not arise out of a state court proceeding that involves "the ability of state courts to perform their judicial functions." Instead plaintiff seeks federal vindication of his rights pursuant to the ADA and Rehabilitation Act where a state court attorney and the administrative office refused to provide reasonable accommodations. Moreover, the challenged proceedings in which defendant Michelle D'Ambrosio was involved in on behalf of Judge Schauer have ended and are not currently pending. As such, *Younger* abstention cannot apply. Since plaintiff claims the recovery of at least $30,000 in damages for the court's failure to provide auxiliary aids, which he had to pay for, *Younger* certainly cannot apply. As held in *Jones*, the federal court's determination as to whether plaintiff-appellant can recover such economic damages, would not "interfere with or disrupt" state court proceedings. Moreover, as the defendants will have to concede they have now started to provide plaintiff the accommodations he required in the form of CART, but still refuse to compensate plaintiff-appellant for his past economic damages arising from their refusal to provide such types of accommodations previously.

C. Abstention Under *O'Shea* is Inappropriate as Plaintiff Does not Seek Continuous Federal Supervision over his State Court Proceedings

Under *O'Shea* "[F]ederal courts must abstain where failure to do so would result in an ongoing federal audit of state criminal proceedings." *Disability Rights N.Y.*, 916 F.3d at 134. This doctrine has been applied to civil cases in limited contexts. However, the Supreme Court specifically applied this to a case in which an injunction was sought "[A]imed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials…amount[ing] to nothing less than an ongoing audit of state…proceedings." *Disability Rights N.Y.*, 916 F.3d at 134. Thus, generally *O'Shea* requires abstention in major class actions seeking broad orders "involving the operations of state courts." *Id.*

Here, the district court improperly applied *O'Shea* abstention as the plaintiff-appellant in no way seeks ongoing or continuous supervision of his state family court proceedings. He seeks the federal court to review whether his federally protected disability rights were violated and to recover economic damages for the cost he spent on auxiliary aids. Although the plaintiff does seek injunctions and equitable relief prohibiting the state court from denying him reasonable accommodations, such relief does not seek to audit the state court or to interfere with the core of the family court proceedings. Plaintiff merely seeks equitable relief so

that he would obtain a note taker, CART services, and large print court orders. Were the federal court to issue an order mandating provision of such accommodations, same would not interfere with any decisions or actions taken by the state court at its core, i.e., custody, visitation, and child support orders. And, in any event the state court is obligated by federal law to provide such accommodations. The plaintiff merely seeks an order compelling the state court to comply with federal law. As such, it was error for the district court to abstain from entertaining jurisdiction under this doctrine.

## V. The Notice of Appeal in This *Pro Se* Matter Was Timely Filed During the COVID-19 Pandemic

It is settled that "The timely filing of a notice of appeal in a civil case is a prerequisite to the appellate court's jurisdiction." *Franklin v. McHugh*, 804 F.3d 627, 629 (2d Cir. 2015). Federal Rule of Appellate Procedure 4(d) provides that: "If a notice of appeal in…a civil…case is mistakenly filed in the court of appeals, the clerk of that court must note on the notice the date when it was received and send it to the district clerk. The notice is then considered filed in the district court on the date so noted." "Rule 4(d) is facially a fail-safe provision. It ensures that individuals who file a notice of appeal in the wrong court, thus providing notice despite the procedural defect, are not barred from pursuing an appeal." *United States v. Hill*, 722 Fed. Appx. 814, 816 (10th Cir. 2018)

In the instant case, the decision and order of dismissal is dated March 5, 2020. Dkt. 84. As such, in order for a notice of appeal to be timely, same had to be filed by April 4, 2020. At the time the plaintiff-appellant filed his notice of appeal he was *pro se* with no counsel of record. The *pro se* plaintiff timely filed out his Notice of Appeal and motion for *in forma pauperis* status by hand on April 3, 2020. Dkt. 86. He then sent a copy by mail to the Southern District of New York, White Plains Courthouse and the United States Court of Appeals for the Second Circuit on April 4, 2020. Dkt. 86. Due to possible COVID-19 related mailing delays the plaintiff then sent three e-mails to the United States Court of Appeal for the Second Circuit attaching the notice of appeal to such e-mails on April 4, 2020 and April 5, 2020. Dkt. 86. The e-mails were sent to the e-mail addresses provided in the Second Circuit's local rules: [newcases@ca2.uscourts.gov](mailto:newcases@ca2.uscourts.gov) and [prosecases@ca2.uscourts.gov](mailto:prosecases@ca2.uscourts.gov). The *pro se* plaintiff-appellant lacked any electronic filing privileges in the Southern District of New York and the Second Circuit but still sent such e-mails. Counsel for the defendants-respondents were carbon copied on the April 5, 2020 e-mail.

According to Local Rule of Appellate Procedure 25.2(d)(1), "In new cases in which the circuit clerk has not yet issued a docketing notice…a pro se party may, submit a PDF to [newcases@ca2.uscourts.gov](mailto:newcases@ca2.uscourts.gov)." In addition subpart (d)(3) provides that "After the clerk has issued a docketing notice in a case involving one or more

pro se parties…a pro se party may, submit a PDF to: prosecases@ca2.uscourts.gov."

Subpart (e) makes clear that the time for submitting such PDFs via e-mail filing must

be "no later than the time for filing the original."

In this case the formerly *pro se* plaintiff-appellant timely filed his notice of

appeal by mail on April 4, 2020 and also attempted to complete electronic filing by

resort to his understanding of Local Rule 25.2(d)(1) and (3). In a situation where a

*pro se* party lacks any electronic filing privileges and is concerned about delays

associated by COVID-19 lockdowns, a reasonable non-lawyer could construe this

local rule as permitting filing by e-mail. As such, the *pro se*'s timely e-mailing of

his Notice of Appeal and motion for *in forma pauperis* status to the United States

Court of Appeals for the Second Circuit should be sufficient to confer jurisdiction.

In any event, Rule 4(d) provides that a mistaken filing of a notice of appeal in the

court of appeals is deemed filed in the district court on the date received by the court

of appeals. *See Camp v. Oliver*, 798 F.2d 434, 434 (11th Cir. 1986) ("When a notice

of appeal is mistakenly filed in the Court of Appeals [the rule] provides it is

deemed filed in the district court on the date it is received in the Court of

Appeals.").

As a third form of filing because of COVID-19 delays, on April 8, 2020 the

plaintiff-appellant also sent another copy of his notice of appeal and *in forma*

*pauperis* motion to the Southern District by facsimile transmission. Dkt. 86. *But*

*see*

Order of Chief Judge Katzman, March 16, 2020, not extending the time to file a notice of appeal even in light of the COVID-19 pandemic.

In *pro se* cases the various sister circuits have held that timely filing a motion for *in forma pauperis* in the absence of a timely notice of appeal is sufficient to confer jurisdiction over an appeal in the court of appeals. In *Martinez v. New England Farm Workers Council*, 1990 U.S. App. LEXIS 22466, *4 (1st Cir. 1990), the First Circuit held: "Given plaintiff's pro se status, we will assert jurisdiction where plaintiff's motion to proceed in forma pauperis on appeal was filed within the time limits required for a notice of appeal."

Additionally, the Fifth Circuit has held: "Under well-settled principles, a timely motion to proceed in forma pauperis on appeal is the substantial equivalent of a notice of appeal and is effective to invoke appellate jurisdiction." *Fischer v. United States Dep't. of Justice*, 759 F.2d 461, 464 (5th Cir. 1985). In *Fischer*, the Fifth Circuit also held that even where a motion to proceed *in forma pauperis* is mistakenly filed in the court of appeals same is deemed filed as of the time received by the court of appeals. *See id*.

In the instant case the plaintiff-appellant timely filed a motion for *in forma pauperis* which should be sufficient to confer jurisdiction over the notice of appeal in this case. Thus, even if the notice of appeal had not been included in any of the

submissions sent via mail, e-mail or fax above, the filing of the motion for *in forma pauperis* status is enough for this court to exercise jurisdiction over this appeal.

Even if the notice of appeal was untimely filed, the Second Circuit has construed a late filing as a motion for an extension of time to file based on excusable neglect, to be determined by the district court. As of this date the Second Circuit has only applied this holding to criminal cases but the same holding and reasoning should apply to *pro se* civil cases. In *United States v. Batista*, 22 F.3d 492, 492 (2d Cir. 1994), this Circuit held "[T]hat where a criminal defendant files a notice of appeal after the ten day deadline of Rule 4(d), but before the additional thirty day period for requesting extensions has expired, the district court should treat the notice as a request for an extension." As of 2020 Rule 4(a)(5)(A) provides that a motion for an extension of time should be made within 30 days after the expiration of the deadline to file a notice of appeal or at any time thereafter upon a showing of excusable neglect or good cause.

The Second Circuit reasoned that "[T[he only practical difference between a formal motion and a notice of appeal is that the latter normally will not contain a proffer of excusable neglect. Allowing the district court to receive that proffer at a later point does no violence to either the letter or spirit of Rule 4(b)." *United States v. Batista*, 22 F.3d at 493. Thus, where the notice of appeal was filed within "the thirty-day period for requesting an extension, it should be treated as a request for an

extension of time to file." *See id*. This Circuit then dismissed the appeal without prejudice to permit the district court to determine whether to afford an extension of time to file an appeal. *See id*.

In the instant case the *pro se* plaintiff-appellant contends he timely filed his Notice of Appeal within 30 days of the decision and order dismissing his case. However, even if the filing was late, it was still made within the 30 day period of time to request an extension of time to file. Since the Notice of Appeal was due on April 4, 2020, any motions for an extension of time were due on May 4, 2020. The docket shows that the notice of appeal was received by the district court on April 16, 2020. Thus, even if this is deemed an untimely filing, the holding of *Batista* should be extended to *pro se* civil cases in light of the COVID-19 pandemic.

# CONCLUSION

For the reasons set forth above, the decision and order of the United States District Court for the Southern District of New York dismissing this case and abstaining from exercising jurisdiction should be reversed, plaintiff-appellant should be provided leave to file an amended complaint, and attorney's fees and costs should be awarded to plaintiff-appellant.

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rules of Appellate Procedure Rules 32(a)(7)(B) and (C), the undersigned attorney certifies that the accompanying brief is printed in 14-point typeface, Times New Roman, and, along with footnotes in 12-point typeface Times New Roman, contains no more than 13,000 words. According to the data in Microsoft Word, this brief contains **10,237** words.

/s/ Caner Demirayak

Caner Demirayak, Esq.