# 20-1300-CV

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

》》《《

MARC FISHMAN,

*Plaintiff-Appellant,*

*v.*

OFFICE OF COURT ADMINISTRATION NEW YORK STATE COURTS, MICHELLE D'AMBROSIO, IN HER ADMINISTRATIVE AND OFFICIAL CAPACITY, NEW YORK STATE UNIFIED COURT SYSTEM, NANCY J. BARRY, DISTRICT EXECUTIVE OF 9TH DISTRICT NY COURTS, IN HER ADMINISTRATIVE AND OFFICIAL CAPACITY, DAN WEISZ, PROFESSIONAL DIRECTOR, IN HIS ADMINISTRATIVE AND OFFICIAL CAPACITY,

*Defendants-Appellees,*

JUDGE GORDON OLIVER, IN HER ADMINISTRATIVE AND OFFICIAL CAPACITY, MAGISTRATE CAROL JORDAN, IN HER ADMINISTRATIVE AND OFFICIAL CAPACITY, KATHY DAVIDSON, CHIEF ADMINISTRATIVE JUDGE OF THE 9TH CIRCUIT AND FORMER CHIEF JUDGE OF THE WESTCHESTER FAMILY COURT IN HER ADMINISTRATIVE AND OFFICIAL CAPACITY, JUDGE MICHELLE I. SCHAUER, IN HER ADMINISTRATIVE AND OFFICIAL CAPACITY, JUDGE HAL B. GREENWALD, IN HIS ADMINISTRATIVE AND OFFICIAL CAPACITY, JUDGE ALAN D. SCHEINKMAN, IN HIS ADMINISTRATIVE AND OFFICIAL CAPACITY AS CHIEF ADMINISTRATIVE JUDGE OF THE 9TH CIRCUIT COURTS,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF FOR DEFENDANTS-APPELLEES**

EILEEN D. MILLETT
*Attorney for Defendants-Appellees*
New York State Unified Court System
25 Beaver Street-11th Floor
New York, New York 10004
(212) 428-2150

LISA M. EVANS
ELIZABETH A. FORMAN
  Of Counsel

# Table of Contents

PRELIMINARY STATEMENT ............................................................1

ISSUES PRESENTED....................................................................3

STATEMENT OF THE CASE..........................................................4
   A.  The Revised Second Amended Complaint.......................................4
   B.  Disability Accommodations in New York's Courts...........................6
   C.  Appellant's Requests for Disability Accommodations ....................9
   D.  CART Reporting as an Administrative Accommodation ..............12
   E.  District Court's Decision.....................................................15

SUMMARY OF ARGUMENT .......................................................16

ARGUMENT ............................................................................18

POINT I: DISTRICT COURT CORRECTLY FOUND THAT APPELLANT'S
MONETARY DAMAGES CLAIMS AGAINST THE OCA APPELLEES ARE
BARRED...................................................................................18

POINT II: DISTRICT COURT CORRECTLY FOUND THAT APPELLANT'S
CLAIMS FOR INJUNCTIVE RELIEF AGAINST THE OCA APPELLEES ARE
BARRED BY THE O'SHEA ABSTENTION DOCTRINE.................................29

POINT III: THE SAC WAS PROPERLY DISMISSED BECAUSE NO VIABLE
CLAIM AGAINST THE OCA APPELLEES WAS PLED ...................................34
   A.  Factual Materials Before This Court............................................34
   B.  Appellant Did Not Plead Any Viable Claim Under the ADA or Rehab Act.36
   C.  Claims Against Barry and Weitz.................................................39
      1.  CART as an Accommodation .................................................40
      2.  Non-interference with Judicial Accommodation Rulings...........................43
   D.  Claims Against Appellee OCA ....................................................45
      1.  CART as an Accommodation .................................................46
      2.  Appellee OCA's ADA Procedures.............................................48

CONCLUSION..........................................................................51

CERTIFICATION OF COMPLIANCE ...............................................52

*Baez v. N.Y. City DOT,*
  No. 14 Civ. 02520 (LGS), 2015 WL 3763878 (S.D.N.Y. June 15, 2015) ........ 36

*Balogh v. H.R.B. Caterers, Inc.*,
  88 A.D.2d 136 (2d Dep't 1982) ....................................................... 19

*Bronx Defs. v. OCA.*,
  475 F. Supp. 3d 278 (S.D.N.Y. 2020) ................................................ 29

*Candelaria v. Cunningham*,
  No. 98 Civ. 6273 (LAP), 2000 WL 798636 (S.D.N.Y. June 19, 2000) ........... 38

*Carrasquillo v. City of N.Y.*,
  324 F. Supp. 2d 428 (S.D.N.Y. 2004) ............................................... 20

*Chambers v. Wright*,
  No. 05 Civ. 9915 (WHP), 2007 WL 4462181 (S.D.N.Y. Dec. 19, 2007) ........ 20

*Cole v. Goord*,
  No. 05 Civ. 2902 (GEL), 2009 WL 2601369 (S.D.N.Y. Aug. 25, 2009) ......... 20

*Dansby-Giles v. Jackson State Univ.*,
  638 F. Supp. 2d 698 (S.D. Miss. 2009) ............................................ 23

*Davis v. Collado*,
  No. 16-CV-7139 (KMK), 2018 WL 4757966 (S.D.N.Y. Sept. 30, 2018) ........ 33

*Davis v. Shah*,
  821 F.3d 231 (2d Cir. 2016) ............................................... 24, 25, 35

*Deem v. Dimella-Deem*,
  941 F.3d 618 (2d Cir. 2019) .......................................................... 32

*DiPizio v. Empire State Dev. Corp.*,
  745 F. App'x 385 (2d Cir. 2018) ..................................................... 37

*Disability Rights N.Y. v. New York*,
  916 F.3d 129 (2d Cir. 2019) ..................................................... 29, 30

*Falco v. Justices of the Matrimonial Parts of the Sup. Ct. of Suffolk Cty.*,
  805 F.3d 425, 427 (2d Cir. 2015) ................................................... 30

*Felix v. N.Y. City Transit Auth.*,
  324 F.3d 102 (2d Cir. 2003) ............................................................. 46

*Fields v. Dep't of Pub. Safety*,
  911 F. Supp. 2d 373 (M.D. La. 2012) ............................................. 23

*Fox v. State Univ. of N.Y.*,
  497 F. Supp. 2d 446 (E.D.N.Y. 2007) ...................................... 20, 38

*Freeman v. Kirisits*,
  No. 16-CV-06668, 2017 WL 475679 (W.D.N.Y. Feb. 6, 2017) ...................... 38

*Fulton v. Goord*,
  591 F.3d 37 (2d Cir. 2009) ...................................................... 25, 36

*Garcia v. S.U.N.Y. Health Scis. Ctr.*,
  280 F.3d 98 (2d Cir. 2001) ...................................... 2, 4, 17, 22, 35

*Gary v. Ga. Dep't of Human Res.*,
  323 F. Supp. 2d 1368 (M.D. Ga. 2004) ........................................... 23

*Hallett v. N.Y. State Dep't of Corr. Servs.*,
  109 F. Supp. 2d 190 (S.D.N.Y. 2000) ............................................ 38

*Harris v. Mills*,
  572 F.3d 66, 73-74 (2d Cir. 2009) ........................................... 35-36

*Henrietta D. v. Bloomberg*,
  331 F.3d 261 (2d Cir. 2003) ...................................................... 25

*Kaufman v. Kaye*,
  466 F.3d 83 (2d Cir. 2006) ................................................ 28-29, 31

*Keitt v. N.Y. State Dep't of Corr. & Cmty. Supervision*,
  No. 11-CV-0855, 2015 WL 2383687 (W.D.N.Y. May 19, 2015) ................... 20

*Kramer v. Time Warner, Inc.*,
  937 F.2d 767 (2d Cir. 1991) ...................................................... 33

*Levy v. Kan. Dep't of Soc. & Rehab. Servs.*,
  789 F.3d 1164 (10th Cir. 2015) .................................................. 22

*Loeffler v. Staten Island Univ. Hosp.*,
 582 F.3d 268 (2d Cir. 2009) ..................................................... 24, 26

*Marks v. Tennessee*,
 562 F. App'x 341 (6th Cir. 2014), cert. denied, 574 U.S. 869 (2014)... 42-43, 48

*Marshall v. Marshall*,
 547 U.S. 293 (2006) ................................................................ 32

*Matter of Solomon v. Fishman*,
 162 A.D.3d 1052 (2d Dep't 2018) .................................................. 45

*Maus v. Wappingers Cent. Sch. Dist.*,
 688 F. Supp. 2d 282 (S.D.N.Y. 2010) ............................................ 20

*Monroe v. Gerbing*,
 No. 16-CV-2818 (KMK), 2017 WL 6614625 (S.D.N.Y. Dec. 27, 2017) ........ 20

*Moody ex rel. J.M. v. N.Y. City Dep't of Educ.*,
 513 F. App'x 95 (2d Cir. 2013) .................................................. 36

*Myers v. New York*,
 06–cv–4583 (NG)(VMS), 2013 WL 3990770 at * 9 (E.D.N.Y. Aug. 5, 2013) 20

*O'Shea v. Littleton*,
 414 U.S. 488 (1974) ...................................................... 2, 4, 16, 27

*Porrazzo v. Bumble Bee Foods, L.L.C.*,
 822 F. Supp. 2d 406 (S.D.N.Y. 2011) ............................................ 33

*Rodriguez v. City of N.Y.*,
 197 F.3d 611 (2d Cir. 1999) ...................................................... 35

*Sanders ex rel.* Rayl *v. Kan. Dep't of Soc. & Rehab. Servs.*,
 317 F. Supp. 2d 1233, 1242 & n.2 (D. Kan. 2004) ............................ 23

*Scalercio-Isenberg v. Port Auth. of N.Y.*,
 No. 16-CV-8494 (VSB), 2018 WL 1633767 (S.D.N.Y. March 31, 2018) ....... 38

*Shotz v. City of Plantation*,
 344 F.3d 1161 (11th Cir. 2003) .................................................. 24

*Sprint Commc'ns, Inc. v. Jacobs*,
 571 U.S. 69 (2013) ................................................................ 28

iv

*Swart v. Colo. Dep't of Corr.,*
  No. Civ. A 07-CV-02718LT, 2009 WL 230699 ................................ 23

*T.W. v. N.Y. State Board of Law Exam'rs*,
  No. 16-CV-3029 (RJD)(RLM), 2019 U.S. Dist. LEXIS 160175 (E.D.N.Y. Sept. 18, 2019) ................................................................ 27

*Temple v. Hudson View Owners Corp.*,
  222 F. Supp. 3d 318 (S.D.N.Y. 2016) ................................ 36

*Tennessee v. Lane*,
  541 U.S. 509 (2004) ................................................ 21

*Thomas v. N.Y. City*,
  814 F. Supp. 1139 (E.D.N.Y. 1993) ................................ 32

*United States v. Georgia*,
  546 U.S. 151 (2006) ................................................ 17

*Whitman v. Am. Trucking Ass'ns*,
  531 U.S. 457 (2001) ................................................ 23

*Wilf v. Bd. of Regents of the Univ. Sys. of Ga.*,
  No. 09-CV-1877-RLV, 2009 WL 10657260 (N.D. Ga. Oct. 20, 2009) ........... 47

*Younger v. Harris*,
  401 U.S. 37 (1971) ............................................ 27, 28

*Zappin v. Cooper*,
  No. 16 Civ. 5985 (KPF), 2018 WL 708369 (S.D.N.Y. Feb. 2, 2018), aff'd, 768 F. App'x 51 (2d Cir. 2019) (Summary Order, Case 18-1545) (May 15, 2019)  37

**Statutes and Regulations**

28 CFR Part 35 ...................................................... 47

Rehabilitation Act § 504, 29 U.S.C. § 794 ............... 5, 6, 9, 11, 16, 25, 35

42 U.S.C. § 2000d-7 .................................................. 23

42 U.S.C. § 12132 ................................................ 35, 38

Fed. R. Civ. P. 12 ....................................... 16, 32, 33, 37, 49

# PRELIMINARY STATEMENT

Defendants-Appellees, the Office of Court Administration ("OCA"), and Nancy Barry and Dan Weitz, both OCA administrators (collectively, "OCA Appellees"), did all they could to assist Plaintiff-Appellant Marc Fishman ("Appellant" or "Fishman") with his requests for accommodations in connection with his participation in Westchester County Family Court proceedings. This is borne out by the documents submitted by Appellant himself to the District Court, and those attached to the operative pleadings, including the Second Amended Complaint, dated November 18, 2018 (Dkt 44-1) ("SAC"),[1] and Appellant's other submissions.  See, e.g., Dkt. 2, 17, 32.  Yet Appellant, who claims a variety of cognitive disabilities, insists that the OCA Defendants, in essence, violated Title II of the ADA, and the Rehabilitation Act simply because they declined to provide him real-time transcription services ("CART"),[2] and because, pursuant to established OCA policy, OCA administrators did not, and could not, review the determinations relating to the various accommodations sought by him from the judges presiding over the Family Court proceedings against Appellant (such determinations are, instead, properly reviewed on appeal, or via CPLR Article 78).

---

[1] Documents in the record before the District Court are referenced by docket number. ("Dkt.")

[2] "CART" is the acronym for "computer-aided real-time transcription service" which uses a live stenographer to immediately transcribe testimony. See http://captionfirst.com/services/cart/.

By decision dated March 5, 2020 (Dkt. 84) (the "Decision"), District Court (Karas, D.J.), granted the OCA Appellees motion to dismiss based, inter alia, on Eleventh Amendment immunity and the abstention doctrine recognized by O'Shea v. Littleton, 414 U.S. 488 (1974) ("O'Shea"). This Court should affirm.

As set out in Point I, *infra,* as correctly held by District Court, the OCA Appellees cannot properly be subject to suit in this forum for monetary damages because, among other reasons, Appellant has not alleged, and cannot demonstrate, any basis for a finding of discriminatory animus against Appellant, as required by Garcia v. S.U.N.Y. Health Scis. Ctr., 280 F.3d 98, 111 (2d Cir. 2001) ("Garcia") in order to abrogate immunity under the ADA. Decision at 13-16.

As discussed in Point II, District Court properly abstained from deciding the claims for declaratory and injunctive relief here seeking, to stay all Family Court proceedings until the Appellees "comply with the ADA and Rehabilitation Act," seeking a declaration with regard to Appellant and "others similarly situated," providing specified accommodations, and removing all decision-making authority over in-court accommodations in Family Court proceedings from state judges. Such claims for relief, under O'Shea, do not properly lie in federal court because the Appellant seeks relief that would require a federal court to direct and oversee a state court on an ongoing basis. This kind of order is inimical to principles of state-

federal comity – it increases friction between the state and federal systems and encroaches unnecessarily on an area of state concern and policy – the conduct of family court matters and proceedings. Decision at 22-24.

Finally, although District Court did not reach this issue, the allegations of the SAC, as informed by the other pleadings and documents submitted by Appellant, does not support any viable cause of action for disability discrimination. See Point III, *infra*. There exists no basis on which to find that the factual allegations of the SAC could support any claim that Appellant was, because of the lack of CART denied "meaningful access" to the Family Court proceedings, in which he fully participated, and for which he as offered and received a variety of accommodations. That Appellant would prefer an additional accommodation, CART, and would prefer that judges not issue rulings relating to such accommodations as they affect proceedings in their courtrooms, does not state a cause of action. For this reason, which was not reached below, the SAC may also be dismissed.

## ISSUES PRESENTED

1.     Did District Court correctly find that Appellant's claims against the OCA Appellees are barred by the Eleventh Amendment because of the lack of any colorable allegation of discriminatory animus, under Garcia v. S.U.N.Y. Health

Scis. Ctr., 280 F.3d 98, 111 (2d Cir. 2001)?

2.     Did the District Court properly find that Appellant's claims against OCA Appellees, which seek to have a federal court dictate and oversee procedures for granting accommodations for disabilities in New York State's family courts, are barred by the abstention doctrine recognized in O'Shea v. Littleton, 414 U.S. 488 (1974)?

3.     Does the SAC plead a viable cause of action as against the OCA Appellees where (1) Appellant has alleged, and can establish, no factual or legal basis on which to find that CART is necessary to address Appellant's purported disabilities in order to provide him meaningful access to Family Court proceedings, in which he fully participated; (2) OCA administrators, pursuant to OCA policy and law, do not have jurisdiction to review the determinations of state judges relating to accommodations affecting in-court proceedings?

## STATEMENT OF THE CASE

### A. <u>The Revised Second Amended Complaint</u>

Plaintiff Marc Fishman alleges that he suffers from traumatic brain injury, post-concussion syndrome, occipital neuralgia, temporomandibular joint syndrome, sleep apnea and various cognitive disorders.  SAC ¶ 1 (Dkt.  44-1).  On

this basis, he claimed that various judicial[3] and non-judicial state officials discriminated against him in the course of proceedings brought against him in Westchester County Family Court. He asserted causes of action under Title II of the Americans with Disabilities Act ("ADA") (SAC ¶¶ 8-35) and § 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794 *et seq.*, (SAC ¶¶ 35-57).[4] Appellant sought monetary, declaratory and injunctive relief, including, among other things, a declaration on behalf of himself and others "similarly situated" that federal and state law was violated, SAC ¶¶ A,C; that all his accommodation requests be administered by the court ADA liaison, rather than the judge " as is customary practice," SAC ¶ B; and a stay of all Family Court proceedings until "Defendants comply" with the ADA and RA. Id. ¶¶ F-I.

In the SAC, as detailed below, Appellant claimed both that the OCA Appellees denied him the use of CART in court, and that decisions with regard to accommodations for his disabilities were improperly made, pursuant to published OCA policy, by judges, rather than by OCA administrators, such as Appellants

---

[3] When issuing its Order of Service, and prior to the filing of motions to dismiss, the district court, *sua sponte,* dismissed all claims against the judicial defendants, including Judge Gordon Oliver, Magistrate Carol Jordan, Judge Kathy Davidson, Judge Michelle I. Schauer, Judge Hal Greenwald, and Judge Alan Scheinkman on the grounds of absolute judicial immunity (Dkt. 46). Decision at 2, n. 2.

[4] To the extent Appellant previously raised a claim under the NYS Human Rights Law, that claim was dismissed by District Court (Decision at 14), and that portion of the Decision was not appealed here.

Barry and Weitz, and seeks injunctive relief as against those procedures. More specifically, Appellant alleged that Appellees Barry and Weitz discriminated against him by denying his request for "CART" real-time court reporting, and that they declined to grant him accommodations that former defendants Judge Schauer and Magistrate Carol Jordan, and Appellee Court Attorney Michele D'Ambrosio had previously denied him. SAC ¶¶ 36, 76-77.[5] Similarly, as against Appellee OCA, Appellant made two groups of claims: (1) that OCA denied Appellant a requested accommodation (CART) that allegedly would have assisted him during judicial proceedings, SAC ¶¶ 36, 50, 53, 56-57, 76-77; and (2) that the process and procedures the state court system uses to address ADA accommodation requests violate the ADA or Rehabilitation Act, and seeks to have the courts implement different procedures. Id. ¶¶ 17-32, 113, 115, 117, 119-21 141-42, 219.

**B. Disability Accommodations in New York's Courts**

The process and procedures for users of New York's courts to obtain disability accommodations differ based on the nature of the accommodation and are set out on the New York State Unified Court System's public website at http://ww2.nycourts.gov/Accessibility/index.shtml. While many ADA accommodation requests are addressable by court administrators, some requests

---

[5] Appellee D'Ambrosio is separately represented by the Office of the Attorney General of New York State.

can only be determined by the judge before whom the requesting person is appearing. The public website's "ADA Guide for Judges and Court Personnel" page (attached to Plaintiff's submissions as Dkt. 17-6, at 2- 3),[6] describes the differences between accommodations that must be ordered by a judge and those that may be made administratively:

> While many accommodations may be arranged by the court's ADA liaison (see below), or other court employees, certain accommodations can only be ordered by the judge or judicial officer presiding in a case.
>
> Judicial accommodations: Only the judge or judicial officer presiding in a pending case may order an accommodation that would implicate the rights of parties to the proceeding or the judge's inherent power to manage the courtroom and proceeding. Such "judicial accommodations" may include, for example, extensions of time for the filing of papers, taking frequent breaks during court proceedings, and remote appearances. While only a judge may order such an accommodation, non-judicial court personnel may be called upon to facilitate the accommodation.
>
> Administrative accommodations: In contrast, accommodations that do not affect the rights of parties to the proceeding or the judge's inherent authority over the courtroom and proceedings may be arranged by non-judicial court personnel. Such "administrative accommodations" include, for example, providing assistive listening devices or scribes, arranging for a court service to be provided in an accessible location, and permitting the entry of a service animal into a courthouse.[7]

---

[6] See http://ww2.nycourts.gov/accessibility/PDFs/17_ADA-Judge_Training.pdf.

[7] The same information was provided on the public website's "How Court Users Can Obtain ADA Accommodations" page.

The procedure for review of the denial of an accommodation request thus varies depending on whether the denial was judicial or administrative in nature. As explained on the public website's "How Court Users Can Obtain ADA Accommodations" page:

> If the requested accommodation is denied and an alternative cannot be agreed upon, you should receive a written explanation for the denial. A final decision to deny an accommodation can only be made by an appropriate executive-level manager (in NYC, the Chief Clerk of the Court, or in Judicial Districts 3-10, the respective District Executive to the District Administrative Judge), or, if the request has been directed to a presiding judge or judicial officer, by that judge or judicial officer.
>
> If a judge or judicial officer has denied the accommodation request, you may ask that he or she do so on the record or in a written order, so that it might be judicially reviewed if you wish to appeal it. For all other denials, you will be provided with a written <u>Denial of Accommodation</u> Form, which can be administratively reviewed.
>
> . . .
>
> A person who has been denied an accommodation may seek review of that decision. If the decision to deny an accommodation was made by a judge or judicial officer in a pending proceeding, review of that decision must be sought through the regular process of judicial review. If the decision to deny an accommodation was made administratively by a Chief Clerk or District Executive in consultation with the ADA Statewide Coordinator, that decision may be reviewed through the Request for Reconsideration process discussed below.
>
> . . .
>
> [In such instances] [t]he Statewide Coordinator will review the reconsideration request promptly, and will review any information or documents submitted ... [T]he Statewide Coordinator may request, obtain and consider additional information deemed necessary.
>
> To the extent possible, the Statewide Coordinator will issue a decision ... within 30 days ... . The Statewide Coordinator may affirm, modify

8

or reverse the initial denial of the accommodation request.

As explicitly stated on the public website, "(t)here is no administrative review of the denial for a judicial accommodation. Review of the denial must be sought through the regular process of judicial review." Id.

### C. <u>Appellant's Requests for Disability Accommodations</u>

During the course of his family court proceedings, Appellant made numerous requests for a variety of different accommodations for his alleged disabilities. Those requests and responses were fully documented before District Court, in particular via Appellant's repeated motions for injunctive relief, and attached or incorporated by reference in the three Complaints in this matter (Dkt. 2, 32, and 44), as described below and discussed in Point III(A), *infra.* A summary of the various requests Appellant directed to court administrators and judges presiding over his family court matters follows:

At the outset, Appellant was directly informed about the appropriate process and procedure for requesting an ADA accommodation, and the role that court administrators played in that process. In a letter dated September 26, 2016, from Nancy Mangold (Appellee Nancy Barry's predecessor as District Executive for the 9th Judicial District) appellant was told that "OCA practice and policy, which is available on the UCS website <u>www.nycourts.gov</u> states that 'if you have a pending

case before a judge or judicial officer and your request for ADA accommodation(s) will require modification of or otherwise affect a court's practices or procedures, the request should be made to the judge or judicial officer.'" (Dkt. 17-9) (letter submitted by Appellant in support of his motion for preliminary injunctive relief on April 24, 2018).[8]

Notwithstanding having been advised that such requests should be made to the judge presiding over his matters, appellant persisted in addressing his requests to the District Executive. In a letter dated October 31, 2016, from the Administrative Judge's Counsel, appellant was again advised that the District Executive could not consider requests for accommodations previously made to and determined by Judge Schauer, the judge then presiding over his Family Court matters, because such determinations were judicial and therefore not subject to administrative review (Dkt. 17-8).[9]

By decision and order dated January 25, 2017 Judge Schauer specifically addressed appellant's ADA accommodation requests (Dkt. 17-13). The Order

---

[8] The September 26 letter also advised Appellant that he should provide the court with as much relevant documentation as possible to support his request. Appellant was also advised that if medical documentation had been provided, Appellant's attorney could inquire with the court as to whether a decision was forthcoming or if the court required further demonstration of disability and the reasonableness of the proposed accommodation (Dkt. 17-9).

[9] In June 2017, Appellant also sought to direct ADA requests not to a judge presiding over his matter but to the Court's Chief Clerk. In response, he was again informed by the Court's ADA Liaison that "UCS policy [is] that if a case is pending before a judge/judicial officer then the ADA accommodation request should be made to that Judge or Law Clerk." (Dkt. 17-2 at 2).

noted that the Court had granted appellant's request that a dispositional hearing be adjourned due to hernia surgery and his claimed need for six or seven weeks to recover, and previously informally granted an accommodation request made by Donna Drumm, Appellant's assigned ADA Advocate, for a 90-day adjournment, and allowed the Advocate to be present during court appearances Id. (Dkt. 17-13 at 3). Additionally, Judge Schauer permitted appellant to wear sunglasses in court. Judge Schauer denied appellant's requests that he be allowed to hire a note taker and use a tape recorder in court; for accommodations on behalf of one of appellant's children; and for various child visitation-related accommodations (Dkt. 17-13 at 4-5). See also Dkt. 2 at 74-78.[10]

---

[10] Judge Schauer's ADA accommodation rulings were upheld by the Appellate Division, Second Department. *See* Dkt. 32 at 65-66, Decision and Order dated June 27, 2018. In particular, the Appellate Division affirmed that Judge Schauer's decision to impose an order of protection on Fishman should not be vacated based on Appellant's allegation that Family Court failed to provide reasonable accommodations for his alleged disabilities. The Appellate Division found that Fishman:

> failed to submit sufficient evidence in support of his claim that he was disabled...[and] did not demonstrate, as is required by the ADA, that, by virtue of his alleged disabilities, he was substantially limited in major life activity [citations omitted]. Moreover, the court, despite the absence of an adequate showing by [plaintiff] of any disability, nonetheless acceded to all of [plaintiff's] reasonable requests for accommodations. *Id* at 65.

The Appellate Division further held that the Family Court

> providently exercised its discretion in denying [plaintiff's] request for the use by him of a personal note-taker or tape recorder at court proceedings, as the father had the ability to order official transcripts of the proceedings. Likewise the court providently denied the [plaintiff's] *ex parte* requests under the guise of an ADA accommodation for alterations to the terms of his supervised parental access with the parties' children, since no alterations could be made in the absence of a determination of the best interests of the

On March 30, 2018, Judge Schauer issued an Interim Decision and Order denying, as an ADA accommodation, appellant's request that he be given an aide to assist him in visiting his children; the judge granted him permission to hire an aide if he chose to, provided that the attorney for the mother and the attorney for the children be given the name of the aide in advance and approve of his or her during visits (Dkt. 17-17 at 4-5). In a related Family Court support proceeding, Support Magistrate Carol Jordan denied appellant's request to provide a scribe, but permitted him to use one of his choosing, provided the person was a neutral party and not a potential witness (Dkt. 17-3 at 2-3).

### D. <u>CART Reporting as an Administrative Accommodation</u>

In June 2018, appellant and an advocacy group writing on his behalf requested the use of real-time reporting (i.e. CART) as an accommodation (Dkt. 29 at 31-34). That request was addressed by Appellee Nancy Barry, then District Executive for the Ninth Judicial District. Barry notified appellant that she needed additional information and requested that he provide documentation sufficient to explain any disabilities that would prevent him from participating in his case, and how the requested accommodation would aid him in doing so (Dkt.71, Exhibit 1).

---

subject children [citations omitted]. The court also providently denied the [plaintiff's] ADA-based requests for the production to the [plaintiff] by the court of confidential records prepared for the court by a social worker, and for certain ADA accommodations for one of his sons, who he claimed was also disabled.

Appellant responded, asserting that he needed the immediate transcripts produced through real-time reporting because it was difficult for him to remember the spoken word as a result of post-concussion syndrome, ringing in his ear from tinnitus, and occipital neuralgia/tmj headaches (Dkt. 71, Exhibit 2) (correspondence incorporated in SAC by reference).

On June 22, 2018, Barry denied appellant's accommodation request, "based on the information provided." (Dkt. 29 at 27-30) (letter attached to August 31, 2018 motion by Plaintiff for injunctive relief); Dkt. 32 at 79-82 (attachment to pleading). Barry stated:

> You have asked for realtime reporting as an ADA accommodation for what you describe as your cognitive disabilities, so that you can be reminded of instructions given the court.
>
> Please be advised that realtime reporting, the simultaneous textual transcription of spoken words on a screen, is used as an accommodation for those with hearing impairments. Although you mention tinnitus, a condition which may in some people cause a hearing loss, you have not provided any medical documentation that it has done so in your case. Nor does it appear that you were unable to hear the proceedings in any of your numerous prior court appearances. If you are able to provide medical documentation that you are hearing-impaired and that your ability to participate in court proceedings is thereby impacted, please submit it. We will then consider whether any assistive technologies might provide an accommodation for your hearing impairment, including assistive listening devices or realtime reporting, or whether any alterations in courtroom practice or procedure that your physician might recommend could provide a suitable accommodation.
>
> Realtime reporting cannot be provided to address your asserted short-

term memory impairment. Transcripts of the official record can be obtained through the usual process upon request, and will provide a complete written record of the proceedings. To the extent that you assert you must obtain an immediate transcript so that you will be able to remember an instruction given you by the court, you may also request from the judge, when given such an instruction, the opportunity to pause the proceedings while you write down what was instructed. Alternatively, you may also for the same purpose make use of your attorney, or of the ADA advocate the trial court has permitted to accompany you during the proceedings, or of a neutral, non-witness notetaker the court has granted you permission to use during proceedings. In any event, the incident you cite regarding your failure to obey the court's written order – that gifts could only be sent to your children "on birthdays and major holidays" – appears to have been caused by your misinterpretation of the language of that written order (i.e. your apparent belief that Passover, Memorial Day and July Fourth could be construed as appropriate gift-giving holidays), not by any failure of memory.

Barry also advised appellant that the procedure for reviewing her denial was attached (Dkt. 32 at 80, 82).

Appellant appealed Barry's decision to Appellee Dan Weitz, OCA's Statewide ADA Coordinator, submitting a one-paragraph doctor's note in support (Dkt. 34-4 at 4). The note did not describe any hearing impairments, and simply stated that a neuropsychological evaluation demonstrated cognitive deficits in several areas relating to memory, and that appellant would benefit from using CART as an aid (Dkt. 34-4 at 4).

By letter dated August 7, 2018, Weitz denied appellant's appeal (Dkt. 34-4 at 2-3). Weitz reiterated that CART reporting is used as an accommodation for the

14

hearing impaired, and that appellant had failed to submit any medical evidence that he was unable to hear what was being said in court, or that tinnitus had caused him any hearing loss (Dkt. 34-4 at 2). Further, the note did "not state that [appellant's cognitive difficulties] are so substantial in comparison to the general population that they constitute a disability, nor does it explain how those cognitive deficits impact [appellant's] ability to participate in court proceedings or specify how the proposed accommodation would address those impacts." (Dkt. 34-4 at 3).

Weitz's decision also stated that the "alternative accommodations" specified in the initial denial of [appellant's] request by Barry "appears sufficient to address any impact [the] asserted memory impairment may have on [appellant's] ability to participate in the programs, services, and activities of the court." (Dkt. 34-4 at 3).

## E. **District Court's Decision**

Following two motions for preliminary injunctions, and repeated amendments to the complaint, on May 23, 2019 Appellees moved to dismiss the SAC. Dkt. 67-72. As relevant here, District Court held that the OCA Appellees, all sued in their official capacities, were entitled to immunity from suit for money damages under the 11th Amendment, or such liability was otherwise not properly pled as against the individuals in their official capacities. Decision at 13-16. The District Court held that Appellant failed to plead any factual basis for a claim of

discriminatory animus under <u>Garcia</u> and the OCA Appellees were therefore entitled to 11th Amendment immunity. <u>Id.</u> District Court also properly held that it would abstain from considering Appellant's claim seeking declaratory and injunctive relief relating to ongoing state court ADA procedures under <u>O'Shea v. Littleton</u>, 414 U.S. 488 (1974). Decision at 22-24. District Court did not reach the portion of the OCA Appellees' motion seeking dismissal, under Fed. R. Civ. P. 12(b)(6), because Appellant did not state a viable cause of action for discrimination under the federal statutes. <u>See</u> Dkt. 72, Point II. This appeal followed.

## SUMMARY OF ARGUMENT

The District Court correctly dismissed Fishman's claims. Fishman's claim for money damages under the ADA against OCA Appellees are barred by the Eleventh Amendment. Title II of the ADA does not abrogate Eleventh Amendment immunity unless the conduct complained of is alleged to have been motivated by discriminatory animus. <u>Garcia,</u> 280 F.3d at 111. The SAC lacks any allegation that OCA, Barry and Weitz acted with discriminatory animus because of Fishman's purported disabilities, and equally devoid of factual allegations that could support such a finding.

<u>Tennessee v. Lane</u>, 541 U.S. 509 (2004), cited by Appellant, does not alter this analysis. There is no claim here that rises to a level of a wholesale deprivation

16

of access to the courts; rather, Appellant participated fully in court proceedings. Nor can Appellant import the standards for waiver of immunity set out in the RA into the ADA. No authority supports this approach.

The District Court also correctly dismissed Fishman's claims for declaratory and injunctive relief under O'Shea abstention doctrine. Fishman sought, among other things, declaratory and injunctive relief compelling OCA Appellees to decide accommodation requests via his chosen procedure, staying Family Court proceedings pending the court's compliance with the ADA and RA, preventing state court judges from controlling their courtrooms, and requiring OCA to provide the exact same relief to all others "similarly situated" to him. Such relief would intrude improperly on the ongoing operations of the courts, and, in particular, on the workings of family courts, which have long been understood to be the exclusive province of the states. This is exactly what is prohibited by O'Shea.

Finally, although not discussed by the District Court, Fishman has failed to state a plausible claim under both the ADA and RA. Even assuming *arguendo* that Fishman is a qualified individual with a disability, which is dubious (and a state court held otherwise), Fishman cannot demonstrate that OCA Appellees denied him a meaningful opportunity to participate in or benefit from the courts' programs. In particular, as against the OCA Appellees, Fishman complains that:

(1) he was not provided CARTS transcription services (although he received multiple different accommodations); and (2) OCA and its administrators failed to review and change judicial rulings about accommodations requested by him. However, the allegations of Fishman's pleadings and his accompanying factual submissions indicate that, although OCA and its administrators engaged in an interactive process with Appellant, he did not establish that he required CARTS transcription in order for him to meaningfully access the courts. Moreover, OCA and its administrators, as set out in the very policy that Appellant attached to his papers, have no ability to review judicial rulings. Judges themselves retain the inherent power to control accommodations that affect their courtroom (including such items, for example, as timing and adjournments); court administrators have no power to review or alter judicial rulings. Such judicial determinations can be reviewed on appeal (or via CPLR Article 78, as appropriate) but lie beyond the jurisdiction of an administrative agency and its employees. For this reason, as well, the action was properly dismissed.

## ARGUMENT

### POINT I: DISTRICT COURT CORRECTLY FOUND THAT APPELLANT'S MONETARY DAMAGES CLAIMS AGAINST THE OCA APPELLEES ARE BARRED

As the court below correctly found, Appellees OCA, Barry, and Weitz (the

latter individuals sued in their official capacities as state officers) are protected from a suit for money damages in federal court. Their Eleventh Amendment immunity under the ADA has not been abrogated because Fishman has not plead discriminatory animus as required to abrogate such immunity. Decision at 13-16.

Title II of the ADA does not abrogate Eleventh Amendment immunity except insofar as the conduct complained of is alleged to have been "motivated by discriminatory animus or ill will based on the plaintiff's disability." Garcia, 280 F.3d at 111. Thereafter, in *United States v. Georgia*, 546 U.S. 151, 159 (2006), the Supreme Court counseled trial courts to determine whether the conduct allegedly in violation of Title II also constitutes a violation of the Fourteenth Amendment and, to the extent it does not, whether it can nonetheless validly be considered a type of conduct for which sovereign immunity has been abrogated. The trial court correctly found these analyses are consonant, and the OCA Appellees here retain Eleventh Amendment immunity because the behavior alleged is not of a type or significance that would abrogate sovereign immunity. Decision at 16.

The SAC is devoid of any allegation that the OCA Appellees acted with discriminatory animus or ill will because of Appellant's alleged disabilities.[11]

---

[11] Appellant alleges that Appellees Barry and Weitz discriminated against him by denying his request for CART reporting, and that they declined to grant him accommodations that Judge Schauer, Court Attorney Michele D'Ambrosio, and Magistrate Jordan had allegedly previously denied him ( SAC, DKT.44  ¶¶ 36, 76 -77). As against Appellee OCA, Appellant asserts claims of allegedly discriminatory acts that fall into two categories: one, that OCA denied Appellant a

Where mentioned by name in the SAC, Barry and Weitz are simply alleged to have discriminated against Fishman by not allowing him to use CART technology to generate same-day transcripts (SAC ¶ 36), and to have not ensured that his court proceedings were accessible to the extent they failed to administratively overrule ADA accommodation request determinations made by judges and court attorneys (SAC ¶¶ 76, 77), something they had no power to do as administrators.

Thus, no allegations support any finding against Barry or Weitz of discriminatory animus or ill will. Moreover, it is undisputed that both Appellee Weitz and Barry entertained Appellant's requests for CART technology as a disability accommodation, invited him to provide further information that might support his request, explained that such technology was not appropriately employed for impairments such as his, and offered a host of alternative methods that could be used as necessary to address his asserted memory impairment. Dkt. 29 (Plaintiff's [Second] Motion for Preliminary Injunctive relief and Declaratory Judgment & Request for Prompt Hearing) at 27-30; Dkt. 32 ((2nd) Amended Complaint) at 79-82; Dkt. 34-4 at 2-3 (attaching correspondence referenced by Appellant).

---

requested accommodation (CART realtime reporting) that allegedly would have enabled greater access to his judicial proceedings (SAC, Dkt. 44 ¶¶ 36, 50, 53, 56-57, 76-77); two, that the process and procedures the state court system uses to address ADA accommodation requests violate the ADA or Rehabilitation Act (SAC, Dkt. 44 ¶¶ 17-32, 113, 115, 117, 119-121, 141-142, 219).

In addition, Fishman was advised several times that court administrators such as Barry and Weitz are simply not authorized to overrule judicial determinations regarding ADA accommodation requests. See, e.g., Dkt 17-9 (correspondence attached to Plaintiff's [First] Motion for Preliminary Injunctive relief and Declaratory Judgment & Request for Prompt Hearing and Incorporated); Dkt. 17-8. Accommodation requests, depending on their nature and context, are addressed either judicially or administratively. The distinction between judicial accommodations and administrative accommodations stems from OCA's appreciation of the appropriate boundaries between judges and court administrators. OCA and its officials do not have authority to supersede, overrule or control a trial judge in carrying out her or his adjudicative responsibilities. *Balogh v. H.R.B. Caterers, Inc.*, 88 A.D.2d 136, 144 (2d Dep't 1982). OCA practice with respect to disability accommodation requests reflects this understanding. Both judicial and non-judicial personnel have an obligation and a role to play in meeting the ADA's mandate that qualified individuals with disabilities must not be excluded from participating in or denied the benefits of the services, programs and activities of the court system; that practice cannot reasonably be described as motivated by discriminatory animus or ill will toward Plaintiff or any individual with a disability, but rather is based in the difference

between the powers of courts and administrators.  In declining, consistent with court system policies and procedures, to exercise discretion over judicial determinations that they did not possess, Appellees Barry and Weitz did not and could not plausibly have demonstrated discriminatory animus or ill will toward Fishman, even if the SAC had raised even a conclusory allegation, which it did not.

Nor, as the court below also properly found (Decision at 15-16), does the Appellant make any factual, non-conclusory allegations that OCA Appellees treated disabled persons any differently than similarly situated non-disabled comparators.  Appellant's generic allegations are thus insufficient to establish a discriminatory intent.

In the absence of plausible factual allegations of discriminatory animus or ill will meeting the Garcia standard, the monetary damages claims were properly dismissed. See Monroe v. Gerbing, No. 16-CV-2818 (KMK), 2017 WL 6614625 at *15 (S.D.N.Y. Dec. 27, 2017); Chambers v. Wright, No. 05 Civ. 9915 (WHP), 2007 WL 4462181 at *4 (S.D.N.Y. Dec. 19, 2007) (both dismissing federal discrimination claims because of lack of discriminatory animus).[12]

---

[12] This result is consistent with those District Court decisions in this Circuit that have held that there is no liability for money damages for individual defendants sued in their official capacities under the ADA and the RA.  See Keitt v. N.Y. State Dep't of Corr. & Cmty. Supervision, No. 11-CV-0855, 2015 WL 2383687 at *21 (W.D.N.Y. May 19, 2015) (ADA or RA suits); Myers v. New York, No. 06–cv–4583 (NG)(VMS), 2013 WL 3990770 at * 9 (E.D.N.Y. Aug. 5, 2013) (ADA suits); Maus v. Wappingers Cent. Sch. Dist., 688 F. Supp. 2d 282, 302 n.10 (S.D.N.Y. 2010)  (ADA or RA suits); Fox v. State Univ. of N.Y., 497 F. Supp. 2d 446, 451 (E.D.N.Y. 2007)

Moreover, Judge Karas correctly rejected Appellant's argument, repeated in Point II of his appellate brief, that the Supreme Court's decision in *Tennessee v. Lane*, 541 U.S. 509 (2004), dictates that Eleventh Amendment immunity is abrogated whenever a right of access to the courts is alleged to have been violated, regardless of the scope or substance of that claim. Appellant provides no legal analysis or caselaw supporting this position, and, as the trial court properly found (Decision at 16-17, fn. 6):

> The Second Circuit, however, has made clear that Lane is not to be applied simply because a plaintiff asserts an infringement of his access to courts; on the contrary, Lane suggests that immunity is abrogated only with respect to claims that raise a genuine issue of the right of access to courts. [citation omitted] …. While Plaintiff conclusorily alleges that Defendants "ma[d]e it extra hard and more difficult [] for [him] to have meaningful access to the state courts," (SAC¶ 84), no specific factual allegation suggests anything remotely rising to the level of a constitutional deprivation.

Fishman fails to allege anything that even remotely could establish that he was unable to access the courts at which he repeatedly appeared and took part in proceedings. Indeed, as set forth below in Point III, Fishman's factual allegations did not state any viable ADA or RA claim, much less amount to a plausible claim of wholesale infringement on the constitutional right to access to courts.

Appellant also argues that OCA Appellees' Eleventh Amendment immunity

---

(ADA suits); *Carrasquillo v. City of N.Y.*, 324 F. Supp. 2d 428, 441 (S.D.N.Y. 2004) (ADA suits). But see, e.g., Cole v. Goord, No. 05 Civ. 2902 (GEL), 2009 WL 2601369 at *5 (S.D.N.Y.

from <u>ADA</u> claims is defeated by an alleged acceptance of federal funding. Appellant's Brief at Pt. 3 at 24-26. While acceptance of federal funding may, under appropriate circumstances, operate as a waiver of sovereign immunity from RA claims, <u>see</u> <u>Garcia</u>, supra, 280 F.3d at 113-14, it does not do so with respect to ADA claims. Even assuming, *arguendo*, that, under the RA, acceptance of federal money to fund one distinct aspect of state court operations could implicate the immunity of other or all facets of the state judiciary, which should not be the law,[13] there is no case law supporting Appellant's wild leap to the conclusion that the waiver provisions of the RA must be read into the ADA.

In any event, courts have uniformly declined to find that the conditions for waiver under the RA result in a waiver under the ADA. In <u>Levy v. Kan. Dep't of Soc. & Rehab. Servs.</u>, 789 F.3d 1164, 1169-71 (10th Cir. 2015), the Tenth Circuit thoroughly rejected the same argument appellant makes here (internal footnote omitted) (emphasis added):

> Levy's primary argument on appeal is that [the defendant state agency] has *waived* its sovereign immunity [from Levy's ADA claim] by accepting federal funds. In particular, he argues that the waiver provisions of the Rehabilitation Act, which we have upheld as valid, similarly apply to the ADA because the Rehabilitation Act and ADA are closely linked.
> ....

---

Aug. 25, 2009).

[13] <u>See</u> fn. 10 *infra*.

However, the close relationship between the two statutes is not sufficient to conclude that the Rehabilitation Act's waiver provisions apply by implication to the ADA ... [T]he statutes were enacted for slightly different purposes and under wholly different provisions of the Constitution.... [T]he ADA was enacted pursuant to the Fourteenth Amendment and the Rehabilitation Act was enacted pursuant to the Spending Clause[.]

....

Although Levy's argument is novel, we must reject it and agree with the Supreme Court when it stated that Congress "does not ... hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) .... For a waiver of sovereign immunity to be "knowing and voluntary," it cannot be hidden in another statute and only applied to the ADA through implication.... [A]s other courts have noted, the ADA has a much broader focus than discrimination by recipients of federal financial assistance....

Moreover, *no court has concluded that the Rehabilitation Act's waiver provisions apply to the ADA. See Fields v. Dep't of Pub. Safety*, 911 F. Supp. 2d 373, 379 (M.D. La. 2012); <u>Swart v. Colo. Dep't of Corr.</u>, No. CIV.A. 07-CV-02718LT, 2009 WL 230699, at *2 (D. Colo. Jan. 30, 2009) ("Not surprisingly, Plaintiff has cited no authority for the proposition that [the waiver] provision of the Rehabilitation Act is applicable to claims under the ADA …."); <u>Dansby-Giles v. Jackson State Univ.</u>, 638 F. Supp. 2d 698, 700-01 (S.D. Miss. 2009); *Gary v. Ga. Dep't of Human Res.*, 323 F. Supp. 2d 1368, 1372 (M.D. Ga. 2004) ("The acceptance of federal funds does not constitute a state's waiver of Eleventh Amendment immunity for alleged violations of … the ADA."); *Sanders ex rel. Rayl v. Kan. Dep't of Soc. & Rehab. Servs.*, 317 F. Supp. 2d 1233, 1242 & n.2 (D. Kan. 2004) (concluding that the Rehabilitation Act's waiver applies solely to § 504 claims and not ADA or § 1983 claims).

…. [T]he ADA was passed *after* the Rehabilitation Act's waiver provisions. Congress could have included a similar waiver provision in the ADA or added the ADA to the list of nondiscrimination statutes in the Rehabilitation Act's waiver provisions, but it did not. 42 U.S.C. § 2000d-7(a)(1). In the absence of clear evidence that Congress intended for states to waive their immunity under the ADA by

accepting federal funds, we will not stretch the language of the Rehabilitation Act to conclude that [the state agency] has made a clear and voluntary waiver of its sovereign immunity for ADA claims.

See also Shotz v. City of Plantation, 344 F.3d 1161, 1174-75 (11th Cir. 2003). This claim must fail.

Appellant also argues that, in analyzing whether Eleventh Amendment immunity from ADA claims had been abrogated, the court below erred in applying Garcia's "discriminatory animus or ill will" standard and should have used instead the "deliberate indifference" standard applied in *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275-76 (2d Cir. 2009). The court below applied the proper standard and, in any event, the SAC lacks any allegations that would satisfy Loeffler.

First, Appellant fails to provide any caselaw supporting the notion that Loeffler established that a "deliberate indifference" analysis should supplant the Garcia standard when considering whether a pleading adequately articulates a basis for a waiver of immunity under the ADA. Loeffler itself contains no such holding, nor does one flow from that case simply because of the general similarity between ADA and RA claims.

Davis v. Shah, 821 F.3d 231, 259–60 (2d Cir. 2016), which post-dated Loeffler by seven years, indicates to the contrary. There, this Court discussed the

extent to which the two disability discrimination statutes were to be treated equally

[footnote omitted]:

> Because the standards imposed by Title II on public entities are generally equivalent to those of § 504, we "treat claims under the two statutes identically" in most cases. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). To state a prima facie claim under either provision, a plaintiff must establish "(1) that she is a qualified individual with a disability; (2) that she was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to her disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks and alterations omitted). [ ] [In addition, under both provisions,] [a] plaintiff may base her discrimination claim on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation.

At the same time, in Davis, this Court also specifically reiterated that "claims for damages under Title II require proof of discriminatory animus." 821 F.3d at 260 n. 19 (citing Garcia). Thus, neither this Court, nor any other that Appellant can cite to, has interpreted Loeffler's 'deliberate indifference' standard as having supplanted Garcia in the manner Appellant urges here, nor does Appellant provide any argument for doing so beyond a formulistic recitation of the similarity of the two statutes.

Nonetheless, assuming, *arguendo*, "deliberate indifference" standard were to be employed for all the claims here, Appellant still would not be able to establish a waiver of immunity under either federal statute. Under that standard, the

intentional discrimination necessary to obtain damages under the RA can be inferred where a policymaker has acted (or chosen not to act) with at least deliberate indifference to the strong likelihood that a violation of a federally protected right will result. See Loeffler, 582 F.3d at 275. Meeting that standard requires factual, non-conclusory allegations that a defendant had actual knowledge of discrimination against the victim, authority to correct the discrimination, and failed to respond adequately. Id. at 275. Appellant has not met that standard.

OCA Appellees took action on Appellant's requests for accommodation that were properly before them, entertaining his requests for CART pursuant to the interactive process required by the ADA, inviting him to submit further information in support of his request, explaining where the accommodation he sought lacked an appropriate nexus with the disability he had presented, offering alternative means through which his alleged disability could be addressed, and providing an avenue for review of their decisions. Dkt. 29 at 27 -30; Dkt. 32 at 79-82; Dkt. 34-4 at 2-3. With respect to allegedly failing to review and overturn the denial of appellant's accommodation requests made by judicial officers, OCA Appellants, as court administrators rather than judges, had no authority to intervene and reverse those judicial decisions. Thus, Appellant has not pled and cannot establish that OCA Appellees acted – by any stretch of imagination– with

deliberate indifference, never mind with discriminatory animus. [14]

## POINT II: DISTRICT COURT CORRECTLY FOUND THAT APPELLANT'S CLAIMS FOR INJUNCTIVE RELIEF AGAINST THE OCA APPELLEES ARE BARRED BY THE O'SHEA ABSTENTION DOCTRINE

The District Court also properly dismissed Appellant's claims for declaratory and injunctive relief under the abstention doctrine recognized by O'Shea v. Littleton, 414 U.S. 488 (1974), which built upon Younger v. Harris, 401 U.S. 37 (1971). Decision at 22-24. O'Shea abstention applies not just to requests to enjoin specific ongoing state proceedings—but also prohibits federal court intervention in state procedure and processes in a manner that would increase friction between the state and federal systems and encroach unnecessarily on an area of policy assigned to the state. See Quackenbush v. Allstate Ins. Co., 517

---

[14] Appellant also argues that District Court improperly recognized immunity under the RA where New York's court system has been found to accept federal funding, thereby abrogating any immunity under the RA. Fishman relies on T.W. v. N.Y. State Board of Law Exam'rs, No. 16-CV-3029 (RJD)(RLM), 2019 U.S. Dist. LEXIS 160175 (E.D.N.Y. Sept. 18, 2019) to claim an abrogation of immunity. But that case is currently on appeal before this Court, in particular because the limited federal funding received by the state courts should not be deemed to work as a system-wide waiver for an entire coordinate branch of government. See T.W. v. State Board of Law Examiners, , No. 19-4136, Brief for Defendants-Appellants, Doc. 46 (April 16, 2020) at 28-36 (arguing that receipt of federal funding for specific purpose should not result in waiver of immunity for entire Judicial Branch of government under RA, and discussing authority so holding). In any event, this Court need not reach this issue in the instant matter because, as explained in Point III, *infra*, it is so clear that no cause of action is stated as against the OCA Appellees. Moreover, as noted by the District Court, all the claims against the individual OCA Appellees in their official capacities under the ADA must be dismissed for the additional reason that such claims do not lie against them. Decision at 13 n. 4.

U.S.706, 716-19 (1996).[15] Federal abstention in such circumstances is required by principles of "comity, that is, a proper respect for state functions." *Younger*, 401 U.S. at 44.

In <u>O'Shea</u>, the plaintiffs sought to enjoin state court judges from carrying out allegedly unconstitutional policies relating to setting bond, sentencing, and jury fees in criminal cases. <u>Id</u>. at 491-92. The Court reasoned that "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future . . .trials" would amount to "nothing less than an ongoing federal audit of state. . . proceedings which would indirectly accomplish the kind of interference that [<u>Younger)</u>] and related cases sought to prevent." *Id.* at 500.

This Court has repeatedly applied <u>O'Shea</u> in civil contexts involving the operations of state courts and, in particular, the family courts, because "federal courts may not entertain actions . . . that seek to impose an ongoing federal audit of state [] proceedings." <u>Kaufman v. Kaye</u>, 466 F.3d 83, 86 (2d Cir. 2006) (dismissing case seeking to enjoin internal state court judicial assignment procedures); *Disability Rights N.Y. v. New York*, 916 F.3d 129, 134 (2d Cir. 2019) (abstaining from decision of ADA claim challenging guardianship procedures).

<hr>

[15] Under <u>Younger</u>, district courts must abstain from exercising jurisdiction when the declaratory or injunctive relief sought in the matter interferes with: (1) "ongoing state criminal prosecutions," (2) "certain civil enforcement proceedings," or (3) "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (internal quotation marks

See also, e.g., Bronx Defs. v. OCA., 475 F. Supp. 3d 278, 286-87 (S.D.N.Y. 2020) (abstaining from decision of ADA challenge to administrative and judicial procedures for in-person appearances at courts during COVID crisis). In these circumstances, "relief, whether declaratory or injunctive, would effect a continuing impermissible 'audit' of New York … [court proceedings,] which would offend the principles of comity and federalism." *Disability Rights N.Y.*, 916 F.3d at 136.

The recent decision of this Court in Disability Rights is virtually on all fours with the current action for present purposes. It addresses a suit seeking declaratory and injunctive relief against the New York State courts based on alleged violations of the ADA and RA. Id. at 130-32. In particular, the plaintiff sought a declaration that certain state court policies and procedures in guardianship proceedings violated the federal law, as well as concomitant equitable relief imposing conditions relating to notice and other procedural issues which plaintiff contended would address the purported deficiencies of the current procedures. Id. at 132. This Court held that it was required to abstain, reasoning that, as in O'Shea, plaintiffs' desired declaratory and/or injunctive relief would permit a "continuing, impermissible 'audit'" of the state court's ongoing proceedings, which "offend[s] the principles of comity and federalism." Id. at 136.[16] See also Falco v. Justices of

---

and citation omitted).

[16] In Disability Rights, this Court did not reach the question of whether the related third type of

the Matrimonial Parts of the Sup. Ct. of Suffolk Cty., 805 F.3d 425, 427 (2d Cir. 2015) (abstention required from decision of constitutional challenge to statute relating to payment of attorney's fees in family court proceedings, when state court had ordered payment of such fees, was warranted because plaintiff's "federal lawsuit [seeking to invalidate the fee payment statute] implicates the way New York courts manage their own divorce and custody proceedings—a subject in which 'the states have an especially strong interest.'" (quoting Philips, Nizer, Benjamin, Krim & Ballon v. Rosentiel, 490 F.2d 509, 516 (2d Cir. 1973)).

Applying O'Shea, District Court found that by this action was:

> an "attempt[] [by appellant] to subject the New York State court system to precisely the sort of 'ongoing audit' and structural interference that O'Shea and Disability Rights prohibit. As [Appellant] makes clear throughout his SAC, insofar as he does not challenge individual judicial decisions, he seeks federal judicial mandate to shift decision-making from Family Court judges to court bureaucrats. (See SAC ¶¶ B (seeking an order directing OCA to accommodate requests that have been denied by state judges); F (seeking a judgment requiring OCA, rather than state judges, to "provide accommodations requests").

(Decision at 23-24).

The District Court therefore held that providing Appellant the requested

---

abstention under Younger v. Harris—where the relief sought would improperly interfere in core and essential state court functions—applied, holding that O'Shea's application was sufficient to bar the action. Id. at 135 ("[W]e do not decide whether this case fits within the third Younger category [as the district court did], for we conclude that it falls squarely within O'Shea's abstention framework."). Similarly, although abstention here would also be proper under the third prong of Younger—because where and how accommodations are to be managed in light of the nature of state family court proceedings is an essential state function—there is no need for

declaratory and injunctive relief would require an 'ongoing case-by-case oversight of state courts ... exactly the sort of interference O'Shea seeks to avoid." Decision at 24. "It is difficult to imagine a more substantial invasion of state court domain." Id. (internal citation and quotation marks omitted). "Because a federal district court has no power to intervene in the internal procedures of the state courts, [Fishman]'s request that this Court compel OCA to overrule and seize authority from state judges, or to otherwise tinker with the internal operations of the state courts, [warrants dismissal]." Id. (citing and quoting Kaufman, 466 F.3d at 86) (internal quotation omitted).

The very essence of Fishman's claim is that he seeks to have a federal court grant a declaration and injunction compelling OCA Appellees to decide accommodation requests via his chosen procedure, staying Family Court proceedings pending the courts' compliance with the ADA and RA, and preventing state court judges from controlling their own courtrooms. Appellant also seeks, among other things, to compel the family court to hold hearings at a particular time of day and to provide him with specific type of court record. He further seeks to transfer authority from state court judges to the court ADA liaison, and to have a federal court mandate and oversee these changes. This would intrude on the ongoing working of the state courts in particular in family court matters which

this Court to reach this issue.

have long been recognized to be a matter of paramount state rather than federal concern.[17] Moreover, the injunction and declaration he seeks would – by its very nature -- require a federal court to monitor state court procedures. This is exactly what was prohibited by O'Shea and Disability Rights. Accordingly, the district court properly declined to exercise jurisdiction and dismissed these claims for relief.

## POINT III: THE SAC WAS PROPERLY DISMISSED BECAUSE NO VIABLE CLAIM AGAINST THE OCA APPELLEES WAS PLED

In any event, any meaningful review of the SAC, as augmented by Appellant's additional submissions, demonstrates that no cause of action has been stated, at this matter may also be dismissed pursuant to Rule 12(b)(6). Very simply, there exists no basis for any factual determination that the OCA Appellants discriminated against Appellant because of his alleged disability.

### A. Factual Materials Before This Court

Generally, in considering a Rule 12(b)(6) motion the Court must limit itself

---

[17] It is well-settled that federal courts generally do not have jurisdiction over domestic relations matters, which include divorce, child custody, child support, and alimony. *Marshall v. Marshall*, 547 U.S. 293, 294–95 (2006). In *Deem v. Dimella-Deem*, 941 F.3d 618, 620-24 (2d Cir. 2019), this Court recently affirmed that the federal courts should abstain from deciding claims that "are on the verge of being, about child custody." (internal quotation marks and citations omitted). This policy exception exists because the states have developed competence and expertise in adjudicating marital and custody disputes, which is not the federal court's traditional area of judicial activity. *See Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

to facts stated in the complaint or documents attached thereto as exhibits or incorporated into the complaint by reference. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 737 (2d Cir. 1991). Where a plaintiff has relied on documents' terms and effect and thus rendered the document integral to its claims, the Court can take judicial notice of the document without the necessity of converting the motion to one for summary judgment. Chambers v. Time Warner. Inc.. 282 F.3dl 47, 153 (2d Cir. 2002). In addition, in a *pro se* action, which this matter was before the present appeal, the Court may also take judicial notice of factual material outside the complaint including documents that have been submitted by plaintiff or that plaintiff possessed or knew about and relied upon in bringing the suit. *Davis v. Collado*, No. 16-CV-7139 (KMK), 2018 WL 4757966 (S.D.N.Y. Sept. 30, 2018). The Court may also on a 12(b)(6) motion take judicial notice of publicly available documents or matters of public record available on a public entity's public website. *Porrazzo v. Bumble Bee Foods, L.L.C.*, 822 F. Supp. 2d 406, 411-12 (S.D.N.Y. 2011).

Appellant submitted numerous documents in support of the SAC, his prior complaints, and requests for preliminary injunctive relief, and either attached or explicitly referenced his correspondence with the OCA Appellants. See, e.g., Dkt. 2, 17, 32, 34. Those documents, on any examination, were all known to and were

relied upon by Appellant in bringing this action, and therefore may properly be considered on motion to dismiss. In addition, the Court is also respectfully requested to take judicial notice of the information available on the UCS public website providing public notice of the disability accommodation process Fishman is challenging. Fishman's submissions referencing this website demonstrate that he also relied upon its content in framing his complaint, and it is therefore integral to his claims challenging those same procedures. See Dkt. 17-6 at 2-3. Finally, OCA Appellees also request that the Court take judicial notice of documents annexed as exhibits to the Declaration of Lee Alan Adlerstein, dated May 24, 2019. (Dkt. 71). These consist of e-mails from June 2018 to and from Appellant regarding his request that court administrators provide him with CART as an ADA accommodation. These documents are or were known to Appellant, implicitly relied upon by him in his pleadings relating to his request for CART, and thus are integral to those pleadings, and should properly be included in considering their substance, and whether a claim has been pled.

## B. **Appellant Did Not Plead Any Viable Claim Under the ADA or Rehab Act**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be

subjected to discrimination by such entity." 42 U.S.C. § 12132. The RA similarly bars disability discrimination as the basis for exclusion from participation in, or denial of the benefits of, government programs and activities, and is subject to the same substantive analysis as the ADA. See Davis, 821 F.3d at 259.

Because Title II of the ADA and Section 504 of the Rehabilitation Act "impose identical requirements," courts "consider these claims in tandem." Rodriguez v. City of N.Y., 197 F.3d 611, 618 (2d Cir. 1999); see also Garcia, 280 F.3d at 112 (explaining "§ 504 of the Rehabilitation Act and Title II of the ADA offer essentially the same protections for people with disabilities"). In order to establish a *prima facie* claim under either provision, a plaintiff must demonstrate, "(1) that she is a qualified individual with a disability; (2) that the defendants are subject to one of the Acts; (3) "that she was 'denied the opportunity to participate in or benefit from defendant's services, programs, or activities, or was otherwise discriminated against by defendants, by reason of her disability.'" Harris v. Mills, 572 F.3d 66, 73-74 (2d Cir. 2009) (quoting Powell v. Nat'l Bd. of Medical Examiners, 364 F.3d 79, 85 (2d Cir. 2004).[18] A defendant discriminates "when it fails to make a reasonable accommodation that would permit a qualified disabled

---

[18] An ADA discrimination claim can be based on any of several theories: intentional discrimination (disparate treatment); disparate impact; or, failure to make a reasonable accommodation. *Fulton*, 591 F.3d at 433.

individual to have access to and take a meaningful part in public services."
McElwee v. Cty. of Orange, 700 F.3d 635, 640 (2d Cir. 2012) (internal quotation
marks omitted).

A reasonable accommodation provides "meaningful access" to public
services. The statutes "do not require optimal accommodations." Moody ex rel.
J.M. v. N.Y. City Dep't of Educ., 513 F. App'x 95, 96 (2d Cir. 2013) (internal
quotation marks omitted); see also Temple v. Hudson View Owners Corp., 222 F.
Supp. 3d 318, 324 (S.D.N.Y. 2016) (ADA "does not require provision of 'a
perfect accommodation or the very accommodation most strongly preferred'")
(quoting Noll v. IBM, 787 F.3d 89, 95 (2d Cir. 2015)). Nor do these statutes
require precisely "equal access or equal results for individuals with disabilities."
*Baez v. N.Y. City DOT*, No. 14 Civ. 02520 (LGS), 2015 WL 3763878, at *2
(S.D.N.Y. June 15, 2015).

Even assuming Appellant is a qualified individual with a disability, which is
dubious,[19] he cannot, based on the pleadings and associated materials before this
Court, demonstrate that he was denied a meaningful opportunity to participate in or

---

[19] Non-mutual defensive collateral estoppel effect may be given to the finding by the Appellate
Division, Second Department in its Decision and Order dated June 27, 2018 that Appellant did
not, in his Family Court proceeding, establish that he was disabled or that his alleged disabilities
substantially limited a major life activity, see Dkt. 32 at 65. See, e.g., Zappin v. Cooper, No. 16
Civ. 5985 (KPF), 2018 WL 708369, at *15-19 (S.D.N.Y. Feb. 2, 2018), aff'd, 768 F. App'x 51
(2d Cir. 2019) (Summary Order, Case 18-1545) (May 15, 2019).

benefit from the programs, services, or activities of OCA Appellees or was otherwise discriminated against on the basis of disability. His claims were and are properly dismissible on this, additional, ground. To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must provide sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." DiPizio v. Empire State Dev. Corp., 745 F. App'x 385, 390 (2d Cir. 2018) (internal citations and quotation marks omitted). "A complaint does not state a 'plausible' claim if it merely asserts 'a sheer possibility that a defendant has acted unlawfully.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). No such plausible claim has been pled here.

## C. Claims Against Barry and Weitz

As set out above, the SAC raises ADA and RA claims against Appellees Barry and Weitz, as OCA administrators, alleging a failure to make a reasonable accommodation for Appellant's disability by (1) denying him the use of CART technology to generate same-day transcripts (SAC ¶ 36), and (2) by not administratively overruling judges and court attorney's previous denial of various ADA accommodations during his ongoing Family Court proceedings (SAC ¶¶ 76, 77). Neither of these allegations state a viable claim for relief.[20]

---

[20] The claims against Barry and Weitz in their official capacities are subject to dismissal for an

### 1. CART as an Accommodation

Appellant has not made a plausible allegation sufficient to support any finding that the lack of CART denied him meaningful access to his underlying Family Court proceedings. His CART request to Barry was premised on his assertion that various disabilities caused a cognitive impairment rendering him unable to fully remember the spoken word (Dkt. 32 at 81). He purportedly sought CART as a means of providing a reminder of oral instructions issued by the court *(*Dkt. 32 at 81*)*. This request did not speak to a litigant's ability to participate in a court proceeding, but rather to obtain a memorialization – for later, out-of-court use – of what was said in court. Such records are of course already routinely produced (in Family Court by means of officially transcribed tape recordings) for all litigants' use. As Barry pointed out, and not disputed by Appellant, "[t]ranscripts of the official record can be obtained through the usual process upon request, and will provide [Appellant] with a complete written record of the

---

additional reason: those claims essentially allege a failure to reasonably accommodate Appellant, and are therefore duplicative of, and indistinguishable from, the same claims raised against Appellee OCA. The ADA prohibits disability discrimination by a public entity, 42 U.S.C.§ 12132, and Appellant also named OCA, a public entity under both the ADA and RA, as a defendant. In such circumstances, there is no need for official capacity litigation since an individual can sue a government entity directly. Candelaria v. Cunningham, No. 98 Civ. 6273 (LAP), 2000 WL 798636 at *4 (S.D.N.Y. June 19, 2000); see also Scalercio-Isenberg v. Port Auth. of N.Y., No. 16-CV-8494 (VSB), 2018 WL 1633767, at *6 (S.D.N.Y. March 31, 2018); *Freeman v. Kirisits*, No. 16-CV-06668, 2017 WL 475679, at *6 (W.D.N.Y. Feb. 6, 2017); Fox, supra, 497 F. Supp. 2d at 451; Hallett v. N.Y. State Dep't of Corr. Servs., 109 F. Supp. 2d 190, 199-200 (S.D.N.Y. 2000). Here, Appellant sued OCA, so there is no justification for asserting

proceedings." (Dkt. 32 at 82). Moreover, Barry's denial of his request was accompanied by a painstaking explanation of the various alternative accommodations that could be made to address Appellant's asserted memory issues: when given an instruction that he was unsure he would remember, he could ask the judge for an opportunity to pause the proceedings and write down the instruction; alternatively, he could ask his attorney, or the "ADA advocate" the court had already allowed to be present with him, or a neutral note-taker that the court had granted him permission to use, to memorialize any important instructions from the judge.[21] Thus, Appellant cannot establish, as a factual matter, that the denial of CART unreasonably denied him the ability to participate in his Family Court proceeding in any meaningful fashion.

Moreover, as Barry advised Appellant, CART is used for accommodating the hearing impaired. Dkt. 32 at 81. Although Appellant had also mentioned

---

the same claims against the individual defendants in their official capacities.

[21] In support of the need for this accommodation, Appellant cited an incident where his alleged inability to remember the court's instructions led to the court finding he had violated the terms of a written Temporary Order of Protection ("TOP"). See SAC ¶¶ 59 - 65. (Appellant now characterizes that alleged memory impairment as "slight." SAC ¶ 65.) As Barry's letter points out, however, that violation stemmed not from a failure of memory but rather from Appellant's misinterpretation of what the written order he does not contest he received actually prohibited, i.e, sending gifts to his children on anything other than "birthdays and major holidays." (Dkt. 32 at 81). Appellant does not allege that there had been any courtroom discussion specifically regarding the appropriateness of sending gifts on Passover, Memorial Day, and the Fourth of July prior to the times he violated the TOP. Thus, having CART would not have assisted Appellant in any way in this regard, and his claim altogether fails.

having a hearing related condition – tinnitus – he provided no medical documentation that it caused a hearing loss, even though Barry invited him to submit documentation if this was the case and it affected his ability to hear in court (Dkt. 32 at 81). Fishman failed to submit any further documentation describing the nature of his hearing impairment and its impact on his ability to participate in court proceedings (Dkt. 34-4 at 3). Here, too, Appellant failed to make a plausible claim that he was denied a reasonable accommodation for an asserted hearing impairment, in particular because he not only failed to provide any reason he required CART, but also failed to respond to Barry's request to provide additional medical documentation in support of his alleged need for such an accommodation.

Similarly, the SAC failed to adequately allege that Weitz's affirmance of Barry's determination caused Appellant to be excluded from or unable to participate in his Family Court proceedings for want of CART. On his appeal of Barry's determination, Fishman again failed to submit any medical evidence that he was unable to hear what was being said in court, or that tinnitus had caused him any hearing loss (Dkt. 34-4 at 2). Fishman did submit a very brief (one paragraph) doctor's note asserting that Fishman was receiving unspecified "cognitive rehabilitation treatment" apparently due to a 2013 head injury and post-concussion syndrome, and stating that a neuropsychological evaluation that Fishman had

undergone a year previously had demonstrated cognitive deficits in several memory-related areas (Dkt. 34-4 at 4). The note opined in conclusory fashion that "due to his cognitive difficulties," Appellant "would benefit from" CART "as an aid." (Dkt. 34-4 at 4). Weitz reasonably found such information insufficient to establish that this particular accommodation was the only acceptable option. As Weitz's affirmance points out, there was no statement that Fishman's cognitive difficulties actually amounted to a disability, no explanation of how they impacted his ability to participate in court proceedings, nor any discussion of how CART would be able to address Fishman's limitations (Dkt. 34-4 at 3). The SAC thus did not offer a plausible factual allegation that could support any finding that Weitz's action denied Appellant meaningful access to participation in the Family Court proceedings, or otherwise amounted to discrimination.

### 2. Non-interference with Judicial Accommodation Rulings

Appellant's allegation that Barry and Weitz violated the ADA by not overruling judicial denials of various ADA accommodation requests (see SAC ¶¶ 76-77) also fails to provide any sufficient factual basis for relief. Appellant asserted that, although aware of Judge Schauer's and Magistrate Jordan's denials of some of Appellant's requested accommodations (Dkt. 17-13; Dkt. 17-17; that Dkt. 17-3), Barry and Weitz did not "act administratively" to grant those

43

accommodation requests.

But Barry and Weitz were not obligated by the ADA to overrule the judicial decisions made on Fishman's accommodation requests, and, indeed, had no power to do so. Those requests were considered by the appropriate persons – the judges presiding over Fishman's pending Family Court matters – in accordance with established policy that pays proper deference to the respective and differing roles and powers of judges and court administrators. See, e.g., Marks v. Tennessee, 562 F. App'x 341, 344-46 (6th Cir. 2014), cert. denied, 574 U.S. 869 (2014) (state court system's policy established judge as appropriate decision maker on ADA accommodation requests seeking case adjournments, and claim that administrative ADA coordinator's refusal to entertain such requests independently of judge violated the ADA was properly dismissed as a matter of law for failing to state a plausible cause of action).

Fishman's submissions reveal that he was repeatedly advised that OCA policy required him to address accommodation requests implicating the rights of parties to the proceeding and/or the Judge's inherent power to manage the courtroom and its proceedings, to the judges before whom his Family Court proceeding was pending (see, e.g., Dkt.17-8; Dkt. 17-9; Dkt. 17-2). He was also repeatedly advised that decisions by judges could not be reviewed or overturned by

court administrators, but rather were subject to review through the judicial process (Dkt 17-9; Dkt. 17-8).[22] Those requests did not go unaddressed, but rather were in fact entertained by the judges before whom Appellant appeared (see e.g. Dkt. 17-13; 17-17; 17-3), and at least on one occasion were reviewed on appeal by the Appellate Division (Dkt. 32 at 65-66). That Barry and Weitz declined to contravene established policy and grant accommodation requests over which they had no jurisdiction, and which had been (or would be) properly addressed instead by judges in Appellant's pending proceedings, as a matter of law, provide no basis to a claim of discrimination. Accordingly, the claims against Barry and Weitz – which does not rise to the level of asserting a deprivation of meaningful access to the court – is also properly dismissed for failure to allege a plausible claim for relief.

### D. Claims Against Appellee OCA

Appellant's claims of disability discrimination by OCA are of two general types: those relating to CART, and those relating to OCA's process and procedures for addressing ADA accommodation requests.

---

[22] This policy and procedure was also set forth on UCS's public web site, with which Appellant was familiar, as evidenced by, *inter alia*, his submission to the District Court of the "ADA Guide for Judges and Court Personnel" web page (Dkt. 17-6 at 2-3).

### 1. CART as an Accommodation

To the extent that Appellant's CART-related claims against OCA are identical to and repetitive of those against Appellees Barry and Weitz, those claims are dismissible for failing to allege a plausible claim for the same reasons set forth above.

As explained above, Appellant's CART-related claim as against OCA appears to focus on CART technology primarily not as a means for actually participating in a courtroom proceeding in real time, as it would allow a hearing impaired person to do, but solely because it also has the accompanying ability to produce a transcript (SAC ¶¶ 50, 53, 56-57). That is, Appellant is asserting not that it was OCA's deprivation of CART that discriminated against him, but rather OCA's deprivation of a CART-produced transcript.

In this regard, Appellant fundamentally misconstrues the purpose behind the ADA's requirement that reasonable accommodations be provided to people with disabilities, i.e., so that those persons are able to participate in a court proceeding in a meaningful fashion. As set forth above, Appellant did not demonstrate that he needs CART to participate in his Family Court proceedings: he has been able to fully participate without that technology, because he is not so hearing impaired as to require it, or at least he has failed to demonstrate that he is. *See Matter of*

*Solomon v. Fishman*, 162 A.D.3d 1052 (2d Dep't 2018), Decision and Order dated June 27, 2018, (Dkt. 32 at 65-66). The SAC fails to plausibly allege that Appellant has a hearing disability requiring a speech-to-text service like CART in order hear and respond to proceedings during his Family Court proceeding.

Alternatively, Appellant appears to take the view that his concededly "slight memory impairment" (SAC ¶ 65) requires that he be given transcripts at no cost.[23] But this is misguided in several respects. First, as noted above, transcripts only memorialize a court session, and thus do nothing to meet the fundamental purpose of the ADA accommodation of allowing a litigant to actively participate in a court proceeding. Second, no average court participant – either memory impaired (as Appellant allegedly is, to some unspecified degree), or not – is capable of remembering word-for-word a courtroom hearing or other proceeding in its complete entirety. "The ADA mandates reasonable accommodation of people with

---

[23] Appellant asserts that OCA should have either given him a free copy of the transcripts generated from tape recordings that constitute the official record of the proceeding (notwithstanding his view that the official transcripts are inadequate representations of the proceedings, SAC *passim)* or a copy of the transcript that can be generated via CART reporting SAC ¶¶ 56-57). It is unclear from the SAC whether Appellant understood that, because CART is used to accommodate the hearing impaired, speech uttered by the hearing impaired person is not itself transcribed into text – only the speech uttered by the other participants is turned into text for the hearing impaired person to view visually. Thus, a CART-derived transcript would not contain a complete record and could not be used for appellate purposes; indeed, only a certified transcription of the tape recording of the proceeding can be used for that purpose.

disabilities in order to put them on an even playing field with the non-disabled," but does not require they be treated preferentially. *Felix v. N.Y. City Transit Auth.*, 324 F.3d 102, 107 (2d Cir. 2003). Providing Appellant with free, immediate transcripts would put him in a better position than non-disabled persons, not an equal position, and would exceed the requirements of the ADA for no identified purpose relating to his purported disability. Accordingly, Appellant failed to raise a cognizable claim that the deprivation of free CART transcripts denied him a reasonable accommodation or was discriminatory.

## 2. Appellee OCA's ADA Procedures

Although Appellant baldly asserts that Appellee OCA lacks an ADA-compliant grievance procedure for reviewing denials of requests for accommodations (SAC ¶¶ 17-32, 219), that assertion is belied by the relevant and undisputed record considered on this motion. Fishman has in fact appealed a denial of his CART request by Nancy Barry to Dan Weitz and received a timely response (Dkt. 32 at 79-82; Dkt. 34-4 at 2-3). OCA's Denial of Accommodation Form (Dkt. 32 at 79-80) specifically sets forth the procedure for administrative review of the denial, by way of a Request for Reconsideration Form or a written statement containing certain information. As stated on the Denial form, the Request for Reconsideration or alternative written statement must be submitted,

along with the Denial form and any additional relevant documentation the requestor wishes to include, within ten days of the Denial, to the Statewide ADA Coordinator for administrative review (Dkt. 32 at 79-80).[24] As noted above, the administrative grievance procedure is set forth in detail on the UCS public website, (which Appellant referenced in his submissions). The Court therefore cannot properly credit the implausible allegation that OCA has failed to adopt "grievance procedures providing for prompt and equitable resolution of complaints alleging any action that would be prohibited by [28 CFR Part 35 - Nondiscrimination on the Basis of Disability in State and Local Government Services]." 28 CFR § 35.107(b).[25]

Appellant also failed to state a cognizable claim in challenging, as violative of the ADA, the fact that judges are "allowed" to address ADA accommodation requests in lieu of court administrators (SAC ¶¶ 113, 115, 117). For the reasons discussed above, UCS has adopted a disability accommodation request process that appropriately takes into account the respective, and different, roles of judicial officers and court administrators when it comes to requests implicating the judge's

---

[24] Notably, the Denial form also states that "Administrative review is not available if your accommodation request was denied by a judge or judicial officer." (Dkt. 32 at 80).

[25] In any event, Appellant does not have a right of action pursuant to 28 CFR § 35.107(b), *see Wilf v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 09-CV-1877-RLV, 2009 WL 10657260, at *6 (N.D. Ga. Oct. 20, 2009).

inherent power over the proceeding or affecting the rights of the parties appearing before the judge. Appellant fails to point to any provision of the ADA that would prevent judges from entertaining disability accommodation requests that impact upon the proceedings going forward in their courtrooms. See Marks, 562 F. App'x at 344-46 (finding similar delegation of authority to be consistent with the ADA).

Appellant also asserts that allowing judges to entertain accommodation requests is impermissible because judicial determinations are not reviewable in a sufficiently timely manner (SAC ¶¶ 119-121). Appellant, however, ignores the fact that the judicial process affords sufficient flexibility to allow a higher court, on an emergency relief basis as warranted, to review and intercede in a lower court's acts, and may also, as is true under New York law, permit collateral challenges to judicial decisions made arbitrarily and capriciously, in violation of law, or contrary to lawful procedure.[26] In any event, no logical claim can be stated against OCA with respect to the timeliness of judicial review of any specific denial of Appellant's accommodation requests, requests that remain properly and necessarily

---

[26] See, e.g., New York CPLR article 78. That Appellant did not have an appeal as of right from several non-dispositional orders of the Family Court pursuant to Family Court Act articles 6 and 8 does not demonstrate the lack of an opportunity for the higher court to intervene in an accommodation request denial made by the lower court where appropriate and required. Appellant does not allege that he made such a request in his motion for a stay of the Family Court orders pending determination of his appeal to the Appellate Division, taken as of right. Moreover, he does not allege that he sought leave to appeal where, as the court noted, no appeal lay as of right. (see Dkt. 17-14 at 2-3) (attachments to letter dated April 30, 2018 from Appellant to Hon. Kenneth M. Karas)

within the purview of judicial officers. Accordingly, the SAC could properly have been dismissed on this basis, under Rule 12(b)(6), as well as those relied upon by the District Court.

## CONCLUSION

**THE DISTRICT COURT'S DISMISSAL OF THE ACTION SHOULD BE AFFIRMED**.

Dated: New York, New York
January 15, 2021

> **EILEEN D. MILLETT,**
> Counsel, Office of Court
> Administration
> New York State Unified Court
> System
> Attorney for OCA Apellees
> 25 Beaver Street-11th Floor
> New York, New York 10004
> (212) 428-2150

> By: /s/ Lisa M. Evans
> Lisa M. Evans

Elizabeth A. Forman, Deputy Counsel
Lisa M. Evans, Assistant Deputy Counsel
*Of Counsel*

# CERTIFICATION OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Mindy Jeng, an attorney in Counsel's Office of the New York State Office of Court Administration, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 12,981 words and complies with the typeface requirements and length limits of Rule 32 (a)(5)-(7) and Local Rule 32.1.